(81 N. W. Rep. 35.)

---

JOHN STOREY *vs.* JOHN W. MURPHY, *et al.*

Opinion filed November 25, 1899.

**Counties—Commissioners—Attorneys—Employment—Ultra Vires—Contract**

This action is brought to enjoin Kidder county and its commissioners from paying out any money or transferring any land to the defendants Baker and Stanley pursuant to an alleged contract of employment entered into in November, 1897, between said Baker and Stanley and the commissioners of said county, by the terms of which said Baker and Stanley agreed as attorneys to prosecute necessary legal proceedings for the collection of certain taxes against the lands of the Northern Pacific Railway Company, situated in Kidder county. Said contract was made while said Stanley was state's attorney for said county, and by its terms Stanley and Baker were to receive as compensation for such services, out of the cash proceeds so collected, a percentage of 25 per cent. thereof, one-fifth part of which was to go to Stanley and the residue to Baker; and it was further stipulated by such contract, in effect, that one-fourth part of any real estate the title to which was obtained in the contemplated legal proceedings was to be transferred to said Baker and Stanley in the same proportion relatively to each. *Held*, under the circumstances, and for the reasons set out in the opinion, that said contract was ultra vires as to the county commissioners, and wholly void. *Held*, further, that the question whether county commissioners may, under their implied powers, and in the absence of statutory restrictions, employ special counsel to attend to matters in which the county is interested, is not involved in this case, and hence such question is not decided.

**Laches in Bringing Suit—Right of Tax Payer to Restrain Unlawful Dissipation of Funds.**

*Held*, further, that the right of a resident taxpayer to ask a court of equity to enjoin the unlawful dissipation of public funds is not lost, as a rule, by mere laches in bringing suit.

**Commissioners' Employment of Private Counsel Void.**

*Held*, construing section 7, chapter 67, Laws 1897, that, until answers have been filed pursuant to the provisions of said chapter, the power vested in county commissioners to employ additional counsel to assist the state's attorney in cases brough under said chapter does not arise; and accordingly *held*, that an attempted employment of

additional counsel made by resolution of the county board, such as appears in this case, was premature, and without legal effect, under section 7, inasmuch as it does not appear that any answer had been filed under said chapter 67 at the time said resolution was adopted.

## When District Judge May Appoint Additional Counsel.

Section 1988, Rev. Codes, construed, and *held*, that in cases pending or to be instituted in the District Court in any county in this state in which the state's attorney is required to appear officially as counsel, and which are important cases, said statute invests the district judge with an exclusive discretion to appoint special counsel to assist the state's attorney; and in such cases the commissioners of the county are without authority to appoint special or additional counsel.

## Attorney General—Duties—Appointment of Assistant Counsel Void.

Chapter 120, Laws 1897, construed. *Held*, under section 1 of said chapter, that in the cases in which the attorney general of the state is required to institute new actions or attend to pending actions relating to the collection of taxes upon the lands of the Northern Pacific Railway Company, that said official is given absolute control in the management of such cases, and that as to cases such as are so placed within the official control of the attorney general, the commissioners of counties interested in the collection of such taxes are without authority to employ special counsel to attend to the same, or to perform professional services in such cases.

## Attorney General's Duty to Represent State in Supreme Court Cases.

*Held*, further, construing section 119, Rev. Codes, that it is the duty of the attorney general to represent the State of North Dakota in actions pending in the Supreme Court of the state, whether said actions are civil or criminal, and that tax cases come within the purview of said section.

Appeal from District Court, Kidder Count; *Winchester*, J.

Action by John Storey against John W. Murphy and others and the State of North Dakota, intervener, to restrain defendants, as county commissioners, from paying defendants Fred A. Baker and Charles H. Stanley for services rendered by them as attorneys. From a judgment in favor of plaintiff, defendants appeal.

Affirmed.

*Charles H. Stanley* (*Fred A. Baker*, of counsel), for appellants.

*Joseph W. Walker* (*James B. Kerr*, of counsel), for respondent.

*John F. Cowan*, Attorney General, for the State.

WALLIN, J. In this action, which is brought for equitable relief, the plaintiff, by his complaint, prays for a permanent injunction restraining said defendants, the County of Kidder and its commissioners, from disbursing or paying over to said other defendants, Fred A. Baker and Charles H. Stanley, or to either of them, any money or county warrant, or transferring to them any land on account of professional services rendered by said Banker and Stanley, or either of them, pursuant to a certain contract, which is hereafter referred to and set out; and plaintiff further prays that said contract be surrendered up and canceled. The complaint avers, in

substance: First, that plaintiff is a resident and taxpayer in said County of Kidder; second, that there is lawfully due to said county and state a large sum of money, to-wit: about $60,000, on account of taxes for the years 1889, 1894, 1895, and 1896, assessed against lands within said county belonging to the Northern Pacific Railway Company, which taxes plaintiff alleges on information and belief are valid and collectible, or largely so; third, that the defendant Fred A. Baker is an attorney at law, residing at Detroit, in the State of Michigan, and that the defendant Charles H. Stanley was at all times in question, and still is, the duly elected, qualified and acting state's attorney in and for said County of Kidder; that in the month of November, 1897, said defendant Fred A. Baker induced the County of Kidder and its commissioners to enter into a pretended contract with him, the said Baker, whereby it was agreed that said Baker should proceed to collect said arrears of taxes, and out of such taxes so collected said Baker was to receive as compensation for his services in collecting the same the sum of 25 per cent thereof. The complaint states that the said pretended contract was made in the following manner, to-wit: "On or about the 12th day of November, A. D. 1897, the said defendant Fred A. Baker addressed to the chairman of the board of county commissioners of said County of Kidder a proposition in writing, in the words and figures following, to-wit: 'Detroit, Mich., Nov. 12, 1897. Mr. J. W. Murphy, Chairman Board of County Commissioners, Steele, Kidder County, North Dakota—Dear Sir: In pursuance of my promise to your board, while in Washington I looked into the question whether the land grant of the Northern Pacific R. R. in Kidder county was subject to taxation in 1889 and since then, and I now advise you that the lands of that company have been subject to taxation ever since the railroad was built through the county on the line of its definite location. I have not yet got the exact date, but I know that it was long before 1889. As far as the claim of the company that its lands were not subject to taxation, until it obtained patents for the same, Nov. 4, 1895, and Jan. 11 and 17, 1896, is concerned, I am of the opinion that it is wholly without foundation, and no deduction from the amount due to the state and county should be made on that ground. In conducting the necessary legal proceedings to enforce the payment of the taxes due, I will need the services of your state's attorney, who should be paid something in additiion to his regular salary, and I therefore submit this proposition: That I am to have twenty-five per cent of all money or lands recovered for the county on the taxes, interest, and penalties for the years 1889, 1894, 1895, and 1896, and one-fifth of this, or five per cent. of the whole, is to be paid or set off to Mr. C. H. Stanley, your state's attorney. The county is to pay all regular court expenses, including disbursements for witness fees, copies of records and briefs, and all the necessary expenses of the litigation, but not including my traveling expenses. I will furnish my professional services to whatever extent they may

be needed on the above terms. If this is satisfactory, please notify me at once. Your ob't servant, Fred A. Baker.' And the plaintiff avers that the said written proposition of the said defendant Fred A. Baker was laid before the board of county commissioners of the County of Kidder aforesaid at and during an adjourned regular meeting of said board on the 20th day of November, A. D. 1897, and that the said proposition was then and there accepted by resolution of said board, which said resolution or motion was then and is in the words following, to-wit: 'Moved and seconded that the proposition of Fred A. Baker, attorney at law, of Detroit, Mich., in regard to conducting the necessary legal proceedings to enforce the payment of certain taxes now due this county on lands of the Northern Pacfic Railroad Company and its receivers, be accepted, and that the auditor be instructed to notify Mr. Baker accordingly; which motion was carried.' And this plaintiff shows to the court that the said pretended contract by and between said board of county commissioners and said County of Kidder on the one part and the said Fred A. Baker on the other part was then and is fraudulent and void, and that the same was then and is a violation of the statutes of the State of North Dakota in such case made and provided; that it was then and is wholly beyond the power of said board of county commissioners and of said County of Kidder to make or enter into any such contract as the pretended contract which is hereinbefore set forth; that said board of county commissioners and said County of Kidder was then and is now without authority to engage or employ any attorney in addition to the duly elected, qualified, and acting state's attorney of said county, except upon the appointment of and by the judge of the District Court, as provided by the Political Code of the State of North Dakota; and this plaintiff alleges that no such appointment of said defendant Fred A. Baker was ever made by the judge of the District Court for said Kidder county. And this plaintiff further alleges that the amount contemplated to be paid to the said defendants Fred A. Baker and Charles H. Stanley for the collection of said taxes is vastly in excess of any reasonable fee for the services agreed to be performed by said defendants under and by the terms of said pretended contract; that it is, and was at the time of the execution of said pretended contract, admitted by the aforesaid Northern Pacific Railroad Company and its receivers that a large proportion of the said taxes so due upon and against its said lands were legally levied and assessed, and were and are rightfully due and payable; and this plaintiff alleges that the services of a competent attorney in instituting and conducting and carrying on any and all litigation necessary to the prosecution of the claims of the County of Kidder for said taxes would not be reasonably worth more than from five hundred dollars to one thousand dollars, whereas the said pretended contract contemplates the payment, as such compensation, of the sum of ten thousand dollars to fifteen thousand dollars. And this plaintiff further alleges that the said pretended contract is con-

trary to public policy, for the reason that the same contemplates a contingent fee or compensation to be determined by the amount to be recovered, and for the further reason that the same contemplates that such fee or compensation shall be paid out of the identical moneys or lands that should be recovered. And by reason of all the foregoing facts the plaintiff alleges that said pretended contract by and between the said board of county commissioners and the said County of Kidder, on the one part, and the said defendant Fred A. Baker on the other part, was at all times and is wholly unauthorized and absolutely void. The plaintiff further alleges that he is informed and believes that the aforesaid Northern Pacific Railroad Company, or its receivers, intend to pay over to the said County of Kidder a large proportiion of the said taxes due upon and against the said lands of said company, and included in said pretended contract with said defendant Fred A. Baker; and that the board of county commissioners of the said County of Kidder threaten and intend to pay over to said defendants Fred A. Baker and Charles H. Stanley the sum and amount of twenty-five per cent. of all such moneys so received, and that the said board of county commissioners will pay over to said defendants Baker and Stanley the sum and amount of twenty-five per cent. of all such moneys so received unless they be restrained and enjoined from so doing; that, if such payment be made by said defendants the board of county commissioners aforesaid and the said County of Kidder to said defendants Fred A. Baker and Charles H. Stanley, this plaintiff will be without remedy, and his burden of taxation will be largely increased by the waste and misapplication of the funds and assets of said County of Kidder." To which complaint said defendants answer jointly.

The great length of the answer (it covers twenty printed pages of the abstract) will prevent its full reproduction in this opinion, and we shall, therefore, give only the substance of such features of the answer as are, in our judgment, decisive of the case. The answer admits that the plaintiff is a resident and taxpayer of said County of Kidder; that taxes, as stated in the complaint, have been levied and assessed against the lands of the Northern Pacific Railway Company situated in said county, and in this behalf the answer states that the aggregate amount of such taxes, with interest and penalty added, was, on March 1, 1898, the sum of $57,088.16, which amount the answer alleges was "at said date, and is still, due and payable to Kidder county; but that said county had not been able to collect the same, and that the only hope that said county has of collecting said taxes is through and by certain legal remedies and proceedings now being conducted by the defendants Charles H. Stanley and Fred A. Baker, as hereinafter more fully stated." The answer further sets out in detail the numerous difficulties which defendants allege the County of Kidder has encountered in its endeavors to collect said taxes respectively; and the answer, in this connection, narrates the history of certain ligation had in

the District Court of Kidder county and in this court, in which the question of the taxability of said lands had been inquired into by the courts. The answer further states, in substance, that, while the validity of said taxes had been announced in principle by the federal courts in similar cases, said county has hitherto been unable to secure the actual payment of said taxes, or any of them. The answer further denies that the receivers of the said railroad company intend to pay said taxes voluntarily, and allege that such is not their intention, but, on the contrary, that said receivers intend to resist such payment as long as possible, and intend not to pay until compelled so to do by the courts of last resort. Defendants admit that the contract set out in the complaint was entered into as stated in the complaint, and their answer alleges that "these defendants admit that at the end of the litigation the board of county commissioners intend, in good faith, to live up to and perform the contract with said Baker, and to pay over to him, for himself and the said Stanley, twenty-five per cent. of the amount received by them, or, if any part of the recovery is in lands, to transfer to them twenty-five per cent. thereof." Defendants deny that the services of a competent attorney in the matter of enforcing the collection of said taxes by legal proceedings would not be reasonably worth to exceed $500 or $1,000; and allege that the amount to be paid under said contract is uncertain, and dependent upon the total amount recovered, and that compensation under the contract is wholly contingent upon success; that said county was without funds, except from the proceeds of such taxes, with which to employ counsel competent for the work; and that, all things considered, the contract in question was as advantageous as could have been made by the county in view of the quantity and quality of the legal services required in the premises. Defendants admit that said Baker is a taxpayer of said county, and that he is an attorney at law residing at Detroit, Mich., and allege that the said Baker has been in active practice in the courts since his admission to the bar in the year 1867. Defendants deny that said contract is in any manner fraudulent, unauthorized, or void, or against public policy, and especially deny that the defendant Fred A. Baker ever induced or solicited said county board to enter into said contract other than at the request of said board to state the terms on which he would be willing to undertake the collection of the taxes in question. The answer expressly denies that said contract is in violation of the statutes of the state, and alleges that the contract is one authorized in terms by the statute of the state, and, further, that the same is a contract which the county commissioners could lawfully make in the exercise of their general powers as the governing board of the County of Kidder. Defendants further show that the performance of said contract contemplates and requires legal proceedings not alone in the District and Supreme Courts of this state, but also in the Circuit Courts of the United States for the District of Wisconsin and the District of North Dakota; also in

the United States Circuit Court of Appeals and in the Supreme Court of the United States. The answer expressly alleges that the defendants Baker and Stanley have entered upon the discharge of their duties under said contract, and in so doing have performed a large amount of professional work, and that said Baker has necessarily paid out $500 in traveling expenses while so engaged, and that the county of Kidder has already expended $1,000 in the payment of necessary court expenses incurred in the prosecution and defense of legal proceedings in the premises. Defendants further charge that said plaintiff knew and was well aware of the fact that the aforesaid legal work was under way and being done under said contract, and that he made no objection thereto within a reasonable time, nor until the complaint herein was filed, and that the action should be dismissed for the reason that the plaintiff has been guilty of gross laches in instituting this action. The nature and character of the professional work done and the legal proceedings actually instituted and engaged in by the defendants Baker and Stanley are set out in detail in the answer, and the answer states that "the defendants believe that if the said Baker, with the assistance of the said Stanley, can be permitted to continue said litigation until the end thereof, that the county will realize nearly, if not quite, all the taxes due to it; and that no settlement will be made except such as will be fair and just to the county, the civil townships, and school districts and the state."

It appears that plaintiff's counsel, upon proper notice, moved in the District Court that the defendants' answer to the complaint in this action "be stricken out as frivolous, and for final judgment in said action for and in behalf of said plaintiff, as prayed for in his complaint." This motion was based upon all the records and files in the action, including the complaint and answer. Subsequent to noticing said motion, and on the 11th day of July, 1899, the State of North Dakota was permitted to intervene as a party in said action, and said state thereupon adopted the complaint of the plaintiff as its complaint in intervention; and said answer of the defendants was accepted as the defendants' answer to the complaint in intervention, and upon said date the record shows "that said motion to strike out said answer and for judgment was brought on for hearing at a regular term of the District Court." All parties to the action were represented by counsel at the hearing of the motion and, the same having been regularly submitted for decision, said court made and filed its order herein, which order is, in substance, as follows: That the court found from the allegations of the complaint and answer that the material facts as stated in the complaint are true; and as conclusions of law based upon the facts as so found the court found that the contract in question was *ultra vires* and void, and "that the answer herein wholly fails to meet the equities of the complaint." The court further found as a legal conclusion from such facts that the plaintiff was entitled to all the relief demanded in the complaint. Pursuant to this order,

plaintiff entered a judgment, from which defendants have appealed to this court.

We first notice the fact that the order of the District Court directing the entry of judgment nowhere makes reference to that feature of the motion in which the District Court is requested to strike out the defendants' answer as "frivolous." It is, however, entirely clear that the court below did not in fact strike out the answer as frivolous, or at all; and it is equally certain upon the record that the foundation facts upon which the order for judgment rests consist of the admissions and allegations of fact embraced in the answer, when considered as responsive to the averments of fact set out in the complaint. In short, the trial court, in its order for judgment, treated plaintiff's motion as a motion for judgment upon the pleadings. · Such a motion assumes that all facts which are material to a decision of the case, whether found in the complaint or answer, are substantially true as alleged. Counsel have discussed no question of practice in this court, but, on the contrary, have presented the whole case upon its merits, and upon the assumption that the averments of fact in the answer are to be considered by this court and acted upon as true, as was done by the court below. Proceeding upon this assumption, the inquiry arises whether the contract in question is or is not valid in law. In discussing this question it should be first noticed that upon this record no attack can be made upon the contract upon the ground either of failure of consideration or fraud; nor do counsel for the plaintiff contend in this court that the contract is vulnerable upon either ground. The facts, as pleaded, would warrant no finding of actual fraud, and, inasmuch as the disbursement to be made under the terms of the contract is contingent upon the collection of taxes, and the amount of such collection being necessarily uncertain, there could be no valid claim of a total failure of consideration. The contract was entered into by the county board by a resolution in due form adopted at a regular session, and the terms appearing in the resolution, in connection with the letter of Baker, are reasonably clear. In this case the record does not require the court to consider or determine whether, under all the circumstances existing when the contract was made, the same was a prudent measure on the part of the commissioners. The contract is not attacked upon the ground that the same is unwise, inexpedient, or fraudulent in fact. Nor do courts ordinarily sit to supervise and correct official discretion in a case where officers are authorized to exercise an official discretion. The crucial question in the case is whether the contract, as made, or attempted to be made, is a legal contract. If this question, under the law, must be answered in the affirmative, the judgment of the trial court must be reversed; if not, it must be affirmed. The question presented is somewhat complicated in its nature, and one not free from embarrassment. We will first dispose of a preliminary point made by the appellants' counsel. Counsel allege and claim that the plaintiff has been guilty of laches

in instituting this action, and for that reason that the action should be dismissed, and cite in support of this contention two early cases in Massachusetts: *Tash* v. *Adams*, 10 Cush. 252, and *Fuller* v. *Inhabitants of Melrose*, 1 Allen, 166. These authorities seem to sustain the views of counsel. Nevertheless we are of the opinion that the weight of modern authority, which concedes to the resident taxpayer the right to intervene on his own behalf as well as on behalf of the public, and invoke the powers of a court of equity to prevent the unlawful dissipation of the public funds, does not recognize the earlier doctrine of laches which defendants seek to invoke. In our judgment, no laches on the part of taxpayers or others can operate to confer authority upon the officials of a corporation in a case where such officials are wholly without power to act. See Beach. Pub. Corp. § 248; *Northern Bank of Toledo* v. *Porter Tp. Trustees*, 110 U. S. 608, 4 Sup. Ct. 254, 28 L. Ed. 258; *Trester* v. *City of Sheboygan*, 87 Wis. 496, 58 N. W. Rep. 747; *Cullen* v. *Town of Carthage*, 103 Ind. 196, 2 N. E. Rep. 571. This court has recently had occasion to consider the same question, and have reached the conclusion that laches does not ordinarily prevent the intervention of a taxpayer to enjoin a disbursement of public funds about to be made without the authority of law or in defiance of law. See *Engstad* v. *Dinnie*, 8 N. D. 1, 76 N. W. Rep. 292. Nor (if this action should be dismissed without a decision upon the merits, and on account of the laches of this plaintiff) are we able to see any reason why another action for the same relief might not be instituted by some taxpayer and resident who has not been guilty of laches in the premises. If this be true, it would certainly not be in furtherance of justice to dismiss the present action without determining the merits. It is alleged in the answer, in substance, that prior to the date of entering into the contract in question the receivers of the Northern Pacific Railroad Company had instituted two actions in the District Court for the County of Kidder, one of which was commenced on the 2d day of December, 1896, and the other on the 7th day of July, 1897; that the defendants in the first action were the county auditor and county treasurer of Kidder county and the State of North Dakota, and that said action was brought to enjoin the collection of certain taxes assessed against said lands in the year 1892; but it is alleged that this action was brought in fact as a test case, and with a view to obtain a decree which would, in effect, cover all the lands in question, and declare that the same were not legally taxable for any of the years in question. The answer further states, in substances, that said action which was instituted on the 7th day of July, 1897, was brought by said receivers against the County of Kidder and States of North Dakota to vacate and set aside any and all rights or liens which the county or state had or may have at any time acquired by virtue of any tax proceedings against the lands in question. It is not alleged that any professional services were performed under said contract in

the action commenced in December, 1896, but it is alleged that services to a large amount were rendered pursuant to the contract in the defense of the other action. With respect to both of said actions, it appears that they were instituted on account of Kidder county taxes assessed against the lands in question. The actions were instituted in Kidder county, and the state was a party defendant in both actions. It is therefore entirely clear that both of said actions were actions in which, under express statutory provisions, it was the official duty of the state's attorney to appear and represent the defendants as counsel. See subdivision 3, § 1979, Rev. Codes. It appears by the answer, and the fact is obviously true, that both of said actions were cases of unusual importance with reference to the financial interests of Kidder county. A very large sum was directly involved, and a question of paramount importance with reference to the taxability of the lands in question was likewise involved. Under such circumstances it might well be said that special counsel was needed, and should have been secured, to assist the state's attorney in defending the interests of the defendants in said actions, and the legislature has anticipated that contingencies might arise similar in character, and to meet the same have made definite provisions for the employment of special counsel to assist the state's attorney. We do not here refer to the authority of the District Court to appoint a state's attorney in cases where there is no such officer, or where the state's attorney is absent, or unable to attend to his duties; nor do we now allude to the statutory right of a state's attorney to appoint an assistant state's attorney; but we do refer to the express authority given to the judge of the District Court by section 1988 of the Revised Codes, which section is as follows: "The judge of the District Court may, in his discretion, appoint special counsel to assist the state's attorney in important cases. Such special counsel shall be paid a reasonable fee therefor, to be approved by the court and paid by the county for which the services were rendered." Upon the facts stated in the defendants' answer, an appointment by the district judge under this statute would, without question, have been a proper exercise of official discretion. But no such appointment is claimed to have been made or asked for. Under these circumstances this court has no hesitation in holding that the district judge, under section 1988, supra, was vested with a discretion which was exclusive as to the appointment of special counsel to assist the state's attorney in the defense of the two actions in the District Court to which we have referred. The actions were important, and they were such actions as fall within the official authority of the state's attorney, and hence the actions were "important cases," which came within the plain letter and meaning of section 1988. In such actions the legislature has seen proper to vest in the district judge a discretion to appoint special counsel, and to provide that such counsel shall be paid out of the county treasury. Nor does such payment at all depend

upon the approval of the county commissioners. This discretion is necessarily exclusive, and we so hold, but in doing so we do not desire to express or intimate an opinion as to the question of the general authority of county commissioners to employ counsel in matters affecting the interests of their county which do not come within the purview of said section 1988. Upon this feature of the case our conclusion is that the county commissioners were without authority to employ Messrs. Baker and Stanley to attend to the two cases brought by the receivers, and we may with propriety add that, in so far as the contract in question authorized payment out of county funds or property to the state's attorney, Stanley, for any services in either of said actions, the same violated an express provision of the statute under which the salary of that officer was fixed by the legislature at the time said contract was made. Rev. Codes, § 2058. See, also, Id. § 1983.

But counsel for defendants make the further point that the county commissioners were expressly authorized by law to make the contract in question, and in support of this contention cite chapter 67 of the Laws of 1897, which law was in force when the contract was made. It does not appear that the commissioners, in entering into this contract, had this statute particularly in mind; nor does it appear that either Baker or Stanley ever performed any professional services in any case or cases arising under chapter 67 of the Laws of 1897. But let it be conceded that the contract is broad enough in its terms to cover any services which could be performed under the provisions of said chapter; nevertheless we are unable to see how such a construction of the contract can aid the defendants. Defendants rely upon a clause of section 7 of said chapter, which reads as follows: "But the county commissioners of the county in which such taxes are laid may employ any other attorney to assist such state's attorney therein." A careful reading of said section 7 in connection with the other provisions of said law of 1897 discloses the fact that no services are required to be performed by the state's attorney under the act until an answer has been filed setting forth a defense or objection to the tax sought to be put in judgment pursuant to the act. If no answer is filed in any given case arising under the statute, a judgment is entered by the clerk of the District Court as upon default, and in such default cases all duties required to be performed under the act are intrusted to minsterial officers, and no appearance in court is needed or permissible in such cases. But upon joinder of issue by the filing of an answer it becomes the duty of the state's attorney to act and proceed with all convenient dispatch to have the issue so formed determined by the court, and in such cases the state's attorney is officially in charge of the prosecution, and it is with reference to such cases that the statute declares in the language we have quoted from section 7 that the commissioners may employ counsel to assist the "state's attorney therein." In the case at bar there is nothing to show that any answer was ever

served in any case arising in Kidder county under chapter 67. We think the burden was upon the defendants in this case to show that the circumstances named in the statute, and under which additional counsel might be employed, actually existed at the time the alleged contract of employment was made. This the defendants have not attempted to do, and hence we shall hold that the defendants can find no support for their defense in the statute under consideration. We may also add, in this connection, that any compensation paid under the contract to the defendant Stanley for services rendered under the act of 1897, would be illegal under the provisions of the statutes above cited. As state's attorney for Kidder county, all such services were compensated in the official salary received by him, such services being strictly official services. Chapter 67 of the Laws of 1897 was created to meet a serious condition of affairs with respect to the collection of a mass of overdue taxes for the year 1895 and prior years, which for one reason or another had not been collected. To accomplish the collection of such taxes, the act provided a proceeding in court whereby a judgment could be obtained for all such taxes as were valid, and upon such judgment the lands against which such taxes were assessed could be sold. This law was not only an efficient remedy for the collection of all taxes assessed in 1895 and prior years, but was, as held by this court, the only remedy in cases where lands had been sold for taxes, and bid in for the state or county, and had not been redeemed. See *McHenry* v. *Kidder Co.* 8 N. D. 413, 79 N. W. Rep. 875. Under this statute the only legal means open to Kidder county for the collection of the taxes for 1889, 1894, and 1895 was by the machinery provided by the act of 1897. The taxes of 1896, which were lawfully assessed and levied, could, of course, be collected by means of a sale of the land in manner and form as the law directs. These methods of collecting taxes as provided by the laws of the state are not only appropriate, but the same are exclusive of other legal means of enforcing payment of taxes. See *McHenry* v. *Kidder Co.*, supra.

It appears, however, that Messrs. Baker and Stanley have petitioned the Circuit Court of the United States which appointed said receivers to pay such taxes, and in so doing have performed services and expended money, but in this connection the answer alleges, in substance, that such receivers do not intend to pay said taxes "until they are compelled to do so by the judgment of the highest courts to which the litigation may be carried by them." If this be the disposition of said receivers,—and it so appears,—it is entirely clear to use that the receivers will not pay the taxes in question until the courts of this state have declared the same to be valid and legal taxes in proceedings instituted under the laws of this state. It is apparent, then, that the county commissioners, in entering into the alleged contract of employment, had in contemplation only such legal services as were appropriate and es-

sential to the collection of taxes under the laws of this state. The courts of this state have the primary right at least of declaring whether alleged taxes levied on land within the state are or are not valid. It must, therefore, in our judgment, be conclusively presumed that the defendants were employed to attend to suits brought in the courts of this state, and that the compensation which the contract provided was to be paid over for such services, and was not to be paid for on account of any isolated venture in the federal courts, such as was made by filing said petition in the Circuit Court of the United States. The contract is in solido, and when construed as a whole, it is found that the major part of the services contemplated by it cannot, for reasons already pointed out, be paid for out of the county treasury. We therefore hold that the said services performed in the Circuit Court of the United States cannot be made available as a means of validating the alleged contract of employment.

It will follow from considerations already suggested in this opinion that the alleged contract of employment is *ultra vires* and void; but our conclusion in the case has been much strengthened by a perusal of another statute, which, for some reason, not apparent to the court, counsel have omitted to cite. We refer to an act of 1897 found in chapter 120 of the Laws of that year. This statute was enacted for the express purpose of facilitating an amicable adjustment of long-standing differences between the state and the Northern Pacific Railroad Company and the receivers of that company, relating to uncollected taxes which had from year to year been assessed against the lands of the company by county officials in which such lands were situated. Such adjustment as was contemplated, if made, would include all uncollected taxes on such lands assessed prior to the passage of the act, and would, of course, include all taxes involved in this action. It is a matter of common knowledge that a number of the counties interested have, since the passage of the act, adjusted and compromised their said differences with the railroad company and its receivers, but it seems that Kidder county has not succeeded in doing so. But we call particular attention to a provision of said act found in section 1 thereof; which reads: "And in case of failure of said commission to reach such agreement, adjustment or compromise on or before the 1st day of July, 1897, the attorney general is hereby instructed to take charge of all the pending litigation between the state and the counties thereof and either of said companies or said receivers and press the same to as speedy a determination as possible." We think the provision we have quoted, when read in connection with the whole statute, contemplates and provides that as to such of said controversies over uncollected taxes as are not adjusted pursuant to the terms of the statute, the same are to be given over to the attorney general of the state with a view to their speedy determination in the courts, and in all courts, whether state or federal, in which such controversies were pending or might be brought. The aim of the statute

was, manifestly, to make provisions for concluding and ending all controversies with said railroad corporation over uncollected taxes. If this construction of said statute is correct, it would follow that the attorney general would be held responsible for the proper control and management of all actions growing out of such controversies as were not adjusted amicably under the terms of the act or otherwise compromised. As to cases falling within the official control of the attorney general, it is obvious that no other attorney could intervene, and take charge of the same as counsel. Hence for such cases the county commissioners would certainly have no right to employ other counsel, and there would be no necessity for doing so. We might add that under a general statute prescribing the duties of the attorney general of this state such officer is expressly required to appear in this court in all cases, civil or criminal, pending in this court, in which the State of North Dakota is a party. See Rev. Codes, § 119.

Counsel for the plaintiffs point out a number of other objections to the legality of the alleged contract, but we deem it unnecessary in this case to formally pass upon the same, and we will therefore, in deference to counsel, simply refer to them, and say that we deem them well worthy of serious attention. Counsel claim that the practice of farming out the public revenues for collection to attorneys who agree to collect upon contingent fees is most injurious, and is against a sound public policy; citing *Platte Co. v. Gerrard* (Neb.) 11 N. W. Rep. 298, which case strongly supports this contention. Again, it is contended that the contract in question is certainly illegal in part, as it provides for paying the state's attorney out of the public funds a bonus for services which are within his official duty, and for which he is compensated by an official salary. Counsel further claim that the contract is illegal, because by its very terms it requires that the fees agreed to be paid to Stanley and Baker are to be deducted from the identical proceeds of taxes collected by them, a large part of which proceeds do not, under the law, belong to Kidder county, but do belong to the state and certain other political bodies located within the County of Kidder. Again, it is urged that the fees to be paid out consist not only of a percentage of cash collected, but also of lands the title to which might be acquired by the legal proceedings contemplated under the contract of employment. In this connection it is urged that no statute of the state authorizes the conveyance of any land by county commissioners to any person whomsoever without a vote of the people, and upon this point is cited Rev. Codes, § 1905. We need not pusue the matter further. It follows, upon grounds already fully stated, that the judgment entered by the trial court is entirely proper, and the same will therefore be affirmed. The other judges concurring.

BARTHOLOMEW, C. J. I concur in the result announced in this case, and the grounds upon which I concur are stated in the opinion of the court, but are therein so connected with other grounds, to

which I do not care at this time to stand committed, that I desire to specify and briefly restate the reasons for my concurrence. The case involves only the question of the power of the county commissioners of Kidder county to bind the county by the contract entered into by said commissioners in behalf of said county with the defendant Fred A. Baker, and which said contract is embodied in the letter of said Baker to the chairman of the said board dated November 12, 1897, and the resolution of said board accepting the offer contained in said letter, which said resolution is dated November 20, 1897. By that contract Baker agreed to give his professional services to any extent that might be necessary for the collection of the delinquent taxes of the years 1889, 1894, 1895. and 1896 against the lands of the Northern Pacific Railroad Company or its receivers, situate in said county. For such services he was to receive 25 per cent. of all money collected upon such taxes or of all lands taken in satisfaction thereof. A certain portion of this amount the county was authorized to pay to Charles H. Stanley, the state's attorney of said county, whose services Mr. Baker stated he would require. I find here no contractual relations between the county and Mr. Stanley. The compensation was all due to Mr. Baker, but he authorized the county to pay a portion of it to the attorney whom he employed to assist him. I find in the answer no such allegations of laches as should defeat plaintiff in this case, but I do not go to the extent of holding that a private person suing as plaintiff is suing in this case may not, by his laches, bar himself from setting up the plea of *ultra vires.* I do not think the point is involved.

What may have been done under this contract, or what at the time of its execution the parties may have expected would be done under it, is not, in my judgment, at all controlling in this case. There is no element of fraud in the contract. Everything was done openly. It was a notorious fact that differences of opinion between the Northern Pacific Railroad Company and the officials of the counties in which it owned lands as to the validity of taxes assessed upon these lands had long existed. These taxes, in one form or another, had been in litigation for ten or twelve years. But for certain statutes, to be noticed later, the contract would, in my judgment, have been an entirely proper one to make. Still, as I view it, the commissioners were without authority to make the particular contract. But I do not base this conclusion upon the fact that there was in that county a duly elected and qualified state's attorney; nor upon the fact that such state's attorney may appoint a deputy; nor upon the fact that the District Court may appoint a state's attorney to act temporarily; nor upon the fact that the District Court may, in important cases, appoint counsel to assist the state's attorney. It may be that these provisions may receive the force and effect intended by the legislature, and yet not deprive the board of county commissioners of all power to

employ counsel under any circumstances. While that board stands charged by law with responsibility for the proper management of the fiscal affairs of the county, with express power to institute and maintain suits for and in behalf of the county, it ought to require clear language to deprive it of the means for the proper performance of the duties with which it stands charged. Nor have I any sympathy whatever with the argument pressed upon the court that the power to employ counsel in the hands of county commissioners is liable to abuse. I know of no other class of officials brought so directly in contact with their constituents as county commissioners, and of no other class of officials held so strictly responsible for official action by their constituents as county commissioners. I am confident that experience will not justify any gratiutous fling at their discretion or integrity in this connection.

But the contract of employment here involved, and which was entered into in November, 1897, was for a specific purpose, to-wit: the collection of the delinquent taxes against the lands of the Northern Pacific Railroad Company, or its receivers, for the years 1889, 1894, 1895, and 1896. There was no specific part of the consideration for any specific part of the services, but all of the consideration for all of the services. It cannot be separated. But as to the collection of the taxes for the year 1895 and all prior years the legislature had, by chapter 67, Laws 1897, made special provision. Under that chapter the state and the various counties were deprived of any rights growing out of purchases by the state or county of any lands at tax sales for delinquent taxes of any of said years, and all such sales were annulled, and the original taxes restored, as if no sale had been made. *McHenry* v. *Kidder Co.* 8 N. D. 413, 79 N. W. Rep. 875. In Kidder county, as I understand it, all the railroad lands that had been sold for the taxes of 1895 or prior years had been bid in by the county; hence the act of 1897 operated upon all such sales, and the land stood, when said contract was made, simply as land upon which the taxes were delinquent for those years. In the *Kidder County Case,* above cited, we held that the collection of such delinquent taxes could be enforced only under the provisions of said chapter 67. It is true the answer in this case sets up various services that have been performed in the federal courts looking toward an order upon the receivers to pay such taxes. But the whole record shows that such taxes are not paid for the reason that their validity is disputed. Of course, the federal court will not order its receivers to pay the taxes while their validity is disputed, and that question can be litigated only in the courts of this state, and, as we have held, must be litigated under said chapter 67. It follows that the services to be performed under the contract must be rendered under the provisions of that statute. But that statute states under what circumstances the county commissioners may employ assistant counsel to act under its provisions. Of course, that excludes the power to employ counsel for the purposes named, under any other conditions. The act

contemplates the procurement of judgments in *rem* in the District Courts against the several tracts of land upon which the taxes are delinquent. The county treasurer is directed to file a list of such tracts with the clerk of the court. This list serves as a complaint in the action. Service is made by publication of the list, and a notice as directed. Any party interested may file answer setting forth the reasons why such taxes or penalties should not be enforced as against any particular tract or tracts of land. The statute provides that the issues thus raised may be brought to a speedy trial upon notice of the state's attorney, and adds: "But the county commissioners of the county in which such taxes are laid may employ any other attorney to assist such state's attorney therein." Laws 1897, chapter 67, § 7. The entire record in this case negatives the idea that Mr. Baker was employed to assist in the trial of the issues as thus joined, and it was not in the power of the board of county commissioners to employ him for any other purpose in connection with the collection of such taxes. If the railroad company or its receivers had instituted or should institute proceedings looking to the cancellation of the taxes for said years, or any of them, the defense of such proceedings had been fully provided for by chapter 120, Laws 1897. In the preamble to that act it is declared, in effect, that the validity of all unpaid taxes on Northern Pacific Railroad lands that had been assessed and levied prior to the date of the act was disputed, and the same were then in litigation, and the act declared that as to all of such taxes as should not be compromised or adjusted prior to July 1, 1897, the attorney general should take charge of such litigation, and press the same to a speedy determination. As to such litigation, it was, of course, beyond the power of the county commissioners to supersede the attorney general. It thus appears that for all litigation that could possibly arise touching these taxes, whether instituted by the counties to enforce their collection or by the landowners to resist their collection or procure a cancellation, special provisions had been made. The board of county commissioners, in making the contract here involved, did not act under or within those provisions. For these reasons I concur in the affirmance of the judgment of the District Court.

(81 N. W. Rep. 23.)