McKINNON, Thiel, Hafener and Leines, Suing on Behalf of Themselves and all Other Persons Similarly Situated, v. ROBINSON, Ebel, Polfuss, Carlson and Slotmoe, Constituting the Board of County Commissioners of Richland County; Mikkelson, as County Treasurer of Richland County; Burton, as County Auditor of Richland County; Richland County, a Municipal Corporation; Ingemann, Jorgenson, and Ingemann, Copartners as Ingemann & Company; Buechner and Orth, Copartners as Buechner & Orth.

(139 N. W. 580.)

**Counties — county buildings — unlawful contract — unlawful expenditures of public funds — interest of taxpayers therein.**

1. Plaintiffs, as residents, citizens, and taxpayers of a county, have such an interest as entitles them to maintain an action in their behalf and in behalf of all others similarly situated, to enjoin the carrying out by the officials of the county of an unlawful contract requiring an extraordinary expenditure of public funds in the erection of a courthouse.

**Counties — county buildings — unlawful contract — injunction — pleading.**

2. In an action by citizens and taxpayers to enjoin county officials from carrying out a contract for the construction of a courthouse, *held*, that the complaint is not vulnerable to attack by demurrer upon the ground that it fails to allege facts sufficient to constitute a cause of action; it appearing from such complaint that the proposition for the construction of such courthouse was not submitted to a vote of the electors of the county, and also that the alleged contract is voidable for other reasons stated in the opinion.

Opinion filed December 31, 1912. Modification denied January 22, 1913.

Appeal from District Court, Richland County, *Frank P. Allen*, J.

A demurrer to the complaint having been sustained, judgment was rendered for defendants, from which plaintiffs appeal.

Note.—In harmony with the above case, the courts generally hold a taxpayer to be the proper party plaintiff to maintain an action for injunction to restrain the building of a courthouse, where the authorities are proceeding illegally, as shown by the note in 36 L.R.A.(N.S.) 18, which reviews the authorities on the question of the right of a taxpayer, in the absence of statute, to enjoin unlawful expenditures by municipality. See also notes in 2 Am. St. Rep. 92 and 64 L.R.A. 619.

The complaint is as follows:

## I.

"That the plaintiffs, and each of them, are residents and citizens of the county of Richland and state of North Dakota, and that they, and each of them, own a large amount of real and personal property, situated within said county and state, upon which they pay, and have paid for many years, a large amount of money in taxes, and that they bring this action on their own behalf and on behalf of all other residents and taxpayers of said Richland county similarly situated.

## II.

"That the defendants W. J. Robinson, C. H. Ebel, John C. Polfuss, L. A. Carlson, and P. E. Slotmoe are now and were on the 27th day of February, 1912, and for a year or more prior thereto, the duly elected, qualified, and acting county commissioners in and for the county of Richland and state of North Dakota, and together constitute the board of county commissioners of said Richland county, as the same is organized and exists by the laws of the state of North Dakota.

## III.

"That the defendant Karl L. Mikkelson is now and was on the 27th day of February, 1912, and for a year or more prior thereto, the duly elected, qualified, and acting treasurer of the county of Richland and state of North Dakota.

## IV.

"That the defendant F. A. Burton is now and was on the 27th day of February, 1912, and for a year or more prior thereto, the duly elected, qualified, and acting auditor in and for the county of Richland and state of North Dakota.

## V.

"That the defendants V. Ingemann, L. P. Jorgenson, and G. Inge-

mann are now, and were during the times hereinafter stated, copartners doing business under the firm name and style of Ingemann & Company.

## VI.

"That the defendants Chas. W. Buechner and Henry W. Orth are now, and were during the times hereinafter stated, copartners doing business under the firm name and style of Buechner & Orth.

## VII.

"That on the 14th day of July, 1903, the Board of county commissioners in and for said Richland county, at a meeting thereof, passed and adopted the following resolution, to wit:

" 'Whereas, the courthouse of Richland county is inadequate to meet the demands and needs of the public, and is also becoming unsound and in need of repairs, and that it will be necessary from time to time to incur expense in making such repair or to add to the present structure,

" 'Therefore, be it resolved, that in order to meet such expense a building fund is hereby created, same to be known as "courthouse building fund," which shall be raised and maintained by a general tax levied on the taxable property within the county, the amount of the levy to be made yearly and within the discretion of this board.'

## VIII.

"That thereafter, and acting under said resolution and without any other right or authority of law, the said board of county commissioners levied upon the taxable property situated in said Richland county the following amounts of money, to wit:

"In the year 1903, the sum of $4,625.31
"In the year 1904, the sum of $4,708.01
"In the year 1905, the sum of $4,835.98
"In the year 1906, the sum of $4,934.67
"In the year 1907, the sum of $4,972.84
"In the year 1908, the sum of $5,009.38
"In the year 1909, the sum of $5,597.06
"In the year 1910, the sum of $5,200.68

24 N. D.—24.

## IX.

"That the greater part of the amounts so levied has been paid, and that the same was paid for the purposes stated in said resolution, to wit, for the purpose of repairing and adding to the present courthouse of said Richland county, and was so collected by the county treasurer of said Richland county and credited to the court house building fund upon his books.

## X.

"That at a meeting of the board of county commissioners in and for said Richland county, held on the 24th day of July, 1911, the defendant F. A. Burton, as county auditor, filed with the said board of county commissioners his estimate of the expenses of said county for the fiscal year, and included in said statement the sum of twenty-four thousand dollars ($24,000) for the court house building fund, and at said meeting of said board, the following resolution was duly passed and adopted by said board of county commissioners, to wit:·

" 'And it is further ordered that an emergency existing in that the present courthouse is inadequate, unsafe, and unsanitary, and must be replaced by a new one, and the fund for such building is insufficient, and such building may have to be constructed within the next year, and before another tax can be levied.

" 'Therefore, a tax be and is hereby levied upon the taxable property in said· Richland county, in addition to the foregoing levy for the year 1911, in the amount of $24,000 for a courthouse building fund.'

## XI.

"That thereafter, the defendant F. A. Burton, as county auditor, levied and extended upon the tax lists of said Richland county for the year 1911, under the heading 'courthouse building fund, emergency,' the sum of twenty-two thousand seventy-nine dollars and twenty-five cents ($22,079.25).

## XII.

"That a part of the amount so levied for the year 1911 has been paid, and that the same was paid for the purposes stated in said resolution, last above mentioned, and was collected by the defendant Karl L. Mikkelson, as county treasurer, for such purpose, and credited by him to the courthouse fund on his books.

## XIII.

"That the question of the construction of a courthouse, the question of the levy of said tax for the year 1911, or the taxes levied for the years 1903 to 1910 inclusive, or any of said questions, was never at any time submitted to the voters of said Richland county at any general or special election, and said county commissioners were never authorized to levy such taxes or to construct said courthouse.

## XIV.

"That on or about the 8th day of December, 1911, said defendants constituting the board of county commissioners, without any right or authority, proceeded to take steps to tear down the old court house, which plaintiffs allege was in good condition and suitable for the business of said county, and to contract for the erection of a new courthouse and boiler house upon the ground occupied thereby; and on said date the said board entered into a contract with the defendants Beuchner & Orth, who are engaged in the business of architects at St. Paul, Minnesota, whereby they attempted to obligate said Richland county to employ said defendants Buechner & Orth, as architects to prepare plans and specifications for such new courthouse, and to pay them the sum of 3 per cent, which amounts to about the sum of three thousand dollars ($3,000) for their services in preparing said plans and specifications; and further provided that said Richland county should pay said defendants Buechner & Orth, the further sum of 1½ per cent of the contract price, or about the sum of fifteen hundred dollars ($1,500) more, in case said board of county commissioners

should request said defendants to superintend the work of building said courthouse.

## XV.

"That on the 12th day of January, 1912, said defendants, the board of county commissioners, accepted and adopted certain plans and specifications for a new courthouse and boiler house, and instructed the defendant county auditor to advertise for bids for the construction of same, to be received on the 26th day of February, 1912; that such plans and specifications do not call for a completed courthouse, and expressly except therefrom heating, ventilating, electric wiring, gas fitting, plumbing, vault doors, vault windows shutters, counters, bar railings and furniture, and provide that such work will be let in separate contracts; that no estimate of the costs of such additional work has ever been made or filed with said board of county commissioners. That no estimate of the cost of constructing said courthouse and boiler house was ever made or filed. That said specifications failed to designate the specific materials of which said courthouse would be constructed, but provide that separate and alternative bids should be submitted upon Kettle river sandstone, Marquette rain drop, Ortonville and St. Cloud granite, Blue Bedford limestone, semi-glazed terra cotta, and Hebron grey pressed brick for the exterior, and upon Tennessee, Vermont, and Italian marble for the interior; and that the defendants board of county commissioners would not make a selection of such materials until after bids were received and opened. That said provisions tended to, and did, prevent free and open competitive bidding upon such work, many contractors were thereby deterred from bidding upon said work, and it was thereby rendered impossible to determine which of the bidders was the lowest bidder, at least prior to the selection by said board of county commissioners of said material.

"That said specifications also failed to designate specifically the kind or quality of hardware to be used in the construction of said building, and permitted a change to be made from the kind and quality of hardware named therein after the contract should be let.

## XVI.

"That on the 26th day of February, 1912, such bids as had been presented for the construction of said courthouse and boiler house were examined by the defendant board of county commissioners, and said board after examining said bids, and not before, determined upon the kind of materials to be used, as aforesaid, the journal of said board stating:

" 'Each bidder submitted a number of bids to cover the variety of materials to be considered per specifications. After a consideration of the bids, the board decided to use the following materials for the building: Kettle river sandstone rough faced, for the basement story, Blue Bedford cut stone for the upper stories, and Italian marble, English vein, for the interior finish.'

"That said defendants then and there, without any such competitive bidding as is contemplated by law, let said contract for the construction of said courthouse and boiler house to the defendants V. Ingemann, L. P. Jorgenson, and G. Ingemann, copartners as Ingemann & Company, as stated in the resolution adopted by said board of county commissioners as follows:

" 'The bid of Ingemann & Company, with the allowance for old courthouse, being the lowest bid, the board on motion awarded the contract to said firm at the amount of $100,350. A subsequent agreement with the said company for tooling the edges of the rough-faced stone in the basement story added $500 to the contract price, making the same $100,850; and the board on motion authorized the drawing up of the contract with Ingemann & Company, Merriam Park, Minnesota, for the erection of a courthouse and boiler house, as per plans and specifications, for the amount of $100,850.'

"That said defendants Ingemann & Company were not the lowest bidders, and said contract was not awarded to the lowest bidder; that no specifications for the additional contract for tooling said stone were made or filed, no estimate of the cost thereof was made, and no bids were received or considered therefor, and that defendants the board of county commissioners, thereby altered the conditions under which the other persons and firms bid upon said work and favored said defendants Ingemann & Company, and awarded them the contract

for the construction of said courthouse for the sum of $100,850, while at least one bidder, one Chas. Skooglum, was a lower bidder, he bidding the sum of $100,409 for constructing said courthouse and boiler house, according to the manner in which said defendants selected the materials for said building.

## XVII.

"That on the 27th day of February, 1912, the defendants board of county commissioners made and entered into a contract in the name of Richland county, with the defendants, Ingemann & Company, by which said board of county commissioners agreed that Richland county should pay to the said Ingemann & Company the sum of $100,850 for the construction of said courthouse and boiler house, according to the plans and specifications aforesaid, said board then and there taking the following proceedings, as shown by its journal:

" 'The written agreement between Ingemann & Company and Richland county, North Dakota, in the matter of contract for the erection of courthouse and boiler house, was submitted and read. After some changes had been made in said agreement, Commissioner Ebel moved that Chairman Sletmoe be authorized and empowered to sign same, which motion was seconded by Commissioner Robinson, and motion carried.'

## XVIII.

"That said contract was executed by defendant Sletmoe on behalf of said defendant Richland county, and by said defendants Ingemann & Company, on said 27th day of February, 1912, and that at the time of the execution of said contract and incurring the indebtedness for the construction of said courthouse and boiler house in the sum of $100,850, said defendants board of county commissioners, and Richland county, or either of them, had not then, nor at any time before or since, made any provision for the collection of an annual tax to pay the interest or principal when due; that said indebtedness was largely in excess of the amount that could be expended for that purpose from the annual revenue of said Richland county for the current year; that

there was on hand at the time of the execution of said contract the sum of not more than $81,454.53 in the courthouse building fund derived from all sources, and the sum of not more than $3,159.91 in the interest and penalty fund, or a total of not more than $84,614.44, and there were and are no other funds of said Richland county which can be secured or expended for such purpose; that of the amount in said courthouse building fund, as aforesaid, a large amount has been diverted by the defendants board of county commissioners, from the funds of the several drainage districts on the books of the county treasurer, by transferring or paying into the interest and penalty fund all penalty and interest collected by the county treasurer on drainage assessments paid prior to July 1, 1911, and thereafter transferring the amount of such penalty and interest, and paying the same into the said courthouse building fund; that the amount of such penalty and interest is unknown to plaintiffs, but plaintiffs are informed and believe, and therefore allege, that the same amounts to several thousands of dollars, and that as shown by the books of defendant the county auditor, there was transferred from the interest and penalty fund into said courthouse building fund, the following amounts:

"On July 12, 1904, the sum of $6,297.34;

"On March 5, 1907, the sum of $15,000;

"On January 4, 1909, the sum of $11,722.57;

"In July, 1910, the sum of $6,000;

"In July, 1911, the sum of $6,000.

"That this court has held in the case of Viking township against the defendant Karl L. Mikkelson, as county treasurer, which case is now pending upon appeal to the supreme court, that such penalty and interest does not belong to said Richland county, but to the several drain funds to which the principal of said assessments belongs; and by such decision said defendant was ordered and required to transfer such interest and penalty involved in that case, to Viking drain No. 14; and that there is also pending in this court, and undetermined, another case involving the same questions of law and facts, entitled State of North Dakota ex rel. Walcott Township et al. versus said defendant, the County Treasurer, the object of said action being to procure a writ of mandamus to require said defendant to transfer to said drain funds, the balance of such penalty and interest.

## XIX.

"That the defendants board of county commissioners have acted throughout the proceeding for the construction of said courthouse and boiler house, and in the levy of the taxes hereinbefore mentioned, the creation of said courthouse building fund, the determination of the question of whether or not said courthouse should be built, and the manner of paying for same, and what amount the same should cost, without in any manner submitting said questions, or any of them, to a vote of the people and taxpayers of said Richland county, but have acted solely according to their own personal desires and wishes in the matter, and without any warrant or authority of law for their acts.

## XX.

"Plaintiffs further allege that the said contract made with defendants Ingemann & Company does not properly protect the interests of the taxpayers and people of Richland county, and that under the conditions of same, power and authority is delegated by said defendants board of county commissioners, to said defendants, Buechner & Orth, to materially alter and vary the specifications upon which said bids were received, and to increase and add to the price bid by said defendants Ingemann & Company, as they may desire, and that the people and taxpayers have no accurate knowledge of the amount that may be expended by said defendants board of county commissioners, in the execution of said contract alone, and no knowledge or information of any kind as to the amount of money that will be expended, or will be necessary to complete said courthouse, so that same will be ready for occupancy. That, among other things, it is provided in said contract as follows:

" 'No alterations shall be made in the work shown or described by the drawings and specifications, except upon a written order of the architects, and when so made, the value of the work added or omitted shall be computed by the architects, and the amount so ascertained shall be added to or deducted from the contract price;' and that in case the value is not agreed upon, said amount shall be fixed by three persons to be selected.

"That it is provided in said contract that the certificates of the architect shall be conclusive on the county and on the contractor.

"That it is also provided therein that the building shall be completed by August 1, 1913; that payments shall be made upon said contract to the amount of 70 per cent of the architect's certificate of work done and materials furnished every thirty days, and that the balance of 30 per cent shall be retained until said building is completed.

## XXI.

"That said defendants board of county commissioners, Ingemann & Company, and Buechner & Orth have begun to carry out said contract, and to tear down the old courthouse, and threaten to, and will, unless restrained by this court, further carry out said contract by construct-ing said new courthouse, and that defendants board of county commis-sioners, F. A. Burton, county auditor, and Karl L. Mikkelson, county treasurer, threaten to and will, unless restrained by this court, issue to the said Ingemann & Company, in payment of such work, the war-rants of said Richland county, and pay the same out of said courthouse building fund, or other funds belonging to said Richland county, and will dissipate and divert the funds of said county, and use money not subject to be used for such purpose, in the construction of such court-house and the carrying out of a contract which is void and without the power and authority of said defendants to make on behalf of said Rich-land county.

## XXII.

"That the plaintiffs are without any remedy at law, and unless the defendants are enjoined from carrying out said contract and issuing and paying the warrants of said Richland county in payment of such work, the plaintiffs and the taxpayers of said county will suffer irrep-arable injury in the payment of their taxes and the amount thereof.

"Wherefore, plaintiff prays the judgment of this court:

"1. That the defendants, and each of them, jointly or severally, or by their agents or servants, be permanently restrained and enjoined from in any manner carrying out said contract so made with the defend-

ants Ingemann & Company, and said contract so made with the defendants Buechner & Orth, and each of them, and that such contracts, and each of them, be adjudged null and void.

"2. That said defendants constituting the board of county commissioners and their successors in office, and the said defendant F. A. Burton, and his successors in office, as county auditor, be permanently restrained and enjoined from in any manner issuing the warrants of said Richland County, or permitting or authorizing the issuance of such warrants, in payment of the amount of said contracts, or either of them, or any part of such amount, and that the defendant Karl L. Mikkelson. and his successors in office, as county treasurer, be permanently restrained from in any manner paying or permitting or authorizing the payment of any of the moneys of said Richland county in carrying out said contracts, or either of them.

"3. That said defendants, and each of them, be permanently restrained and enjoined from in any manner proceeding to construct a courthouse, and from levying and collecting, or attempting to collect, any tax or taxes for such purpose, unless they shall first submit the question of the construction of such courthouse, and of the levy of such taxes, to a vote of the people of said Richland county at an election duly called, as provided by law.

"4. That a restraining order, in the same form, issue, pending the determination of this action.

"5. That plaintiffs have such other and further relief in the premises as shall be just and equitable, and that they recover of defendants their costs and disbursements incurred therein."

The grounds of the demurrer are:

"1. That said complaint fails to state facts sufficient to constitute a cause of action against the defendants or any of them.

"2. That the plaintiffs have no such special interest in the subject-matter of said action as authorizes them to bring said suit."

*Pierce, Tenneson, & Cupler,* for appellants.

A resident and taxpayer of the municipality may maintain an action to enjoin municipal officers from exceeding their a᠆thority in making or carrying out public contracts. Engstad v. Dinnie, 8 N. D. 11, 76 N. W. 292; Storey v. Murphy, 9 N. D. 115, 81 N. W. 23; Fox v.

Walley, 13 N. D. 610, 102 N. W. 161; Weatherer v. Herron, 25 S. D. 208, 126 N. W. 244; 22 Cyc. 897.

Proper to join as plaintiffs "all other persons similarly situated." Webster v. Douglas County, 102 Wis. 181, 72 Am. St. Rep. 870, 77 N. W. 885, 78 N. W. 451; 1 Winslow, Forms, 522–524; 30 Cyc. 133; 16 Cyc. 191.

Under code practice, there is no distinction between actions at law and suits in equity. Rev. Codes, Sec. 6767.

Facts in suit in equity need not be more distinctly alleged in the complaint than in other civil actions. Swenson v. Swenson, 17 S. D. 558, 97 N. W. 845; Rev. Codes, Sec. 6851; 31 Cyc. 288.

Contract to the common-law rule, every reasonable intendment and presumption is to be made in favor of the pleading. Weber v. Lewis, 19 N. D. 473, 34 L.R.A.(N.S.) 364, 126 N. W. 105; McConnon & Co. v. Laursen, 22 N. D. 604, 135 N. W. 213; Donovan v. St. Anthony & D. Elevator Co. 7 N. D. 518, 66 Am. St. Rep. 674, 75 N. W. 809; Bliss, Code Pl. 2d ed. § 425–a; Tisdale v. Ward County, 20 N. D. 401, 127 N. W. 512.

Pleading may be made definite and certain, by amendment. Rev. Codes, Sec. 6870.

Where the substantial facts are stated in the complaint, although the allegation of such facts is imperfect and incomplete as to form, the proper mode of correction is by motion to make the averments more definite and certain, rather than to raise question by demurrer. Weber v. Lewis, 19 N. D. 473, 34 L.R.A.(N.S.) 364, 126 N. W. 105; Johnson v. Great Northern R. Co. 12 N. D. 420, 97 N. W. 546; 6 Enc. Pl. & Pr. 276; Bliss, Code Pl. 2d ed. § 425–315.

Variance in the allegations of a complaint is not ground for demurrer, but must be reached by motion. 31 Cyc. 300; Walters v. Chance, 73 Kan. 680, 85 Pac. 779; Phillips v. Runnels, Morris (Iowa) 391, 43 Am. Dec. 109; Mahan v. Sutherland, 73 Me. 158; Barrett v. Jones, 21 Ark. 455; Mullins v. Hume, 15 Ky. L. Rep. 93; McDonough v. Kane, 75 Ind. 181; Bliss, Code Pl. 2d ed. § 314.

A pleading should be construed so as to support the declaration, in the sense intended, rather than to defeat it. Bliss, Code Pl. supra; Donovan v. St. Anthony & D. Elevator Co. 7 N. D. 519, 66 Am. St. Rep. 674, 75 N. W. 809.

Under the codes, the allegation of a legal conclusion does not usually render the pleading open to demurrer. 31 Cyc. 280; Weber v. Lewis, 19 N. D. 473, 34 L.R.A.(N.S.) 364, 126 N. W. 105; Bliss, Code Pl. 2d ed. 214; Tisdale v. Ward County, 20 N. D. 401, 127 N. W. 512; Donovan v. St. Anthony & D. Elevator Co. 7 N. D. 513, 66 Am. St. Rep. 674, 75 N. W. 809.

Commissioners of a county have no authority to levy taxes for an "extraordinary purpose" without first submitting the question to a vote of the people of the county. The expenditure of money for the erection of a courthouse is an "extraordinary expenditure," and the commissioners are without authority to raise money for such purpose by taxation, in the absence of an affirmative. McNutt v. Lemhi County, 12 Idaho, 63, 84 Pac. 1054; Rev. Codes, Secs. 2405–2406; Chapter 67, Laws 1909.

The commissioners cannot do indirectly what they are not permitted to do directly, and thus violate statutes intended to guard the rights of the taxpayers. Const. Secs. 130, 175.

The question must be submitted to a vote of the people. Atty. Gen. ex rel. Gibson v. Montcalm County, 141 Mich. 590, 104 N. W. 792.

An annual tax to pay principal and interest must first be provided for. 11 Cyc. 461, 462, 507, 508; Rev. Codes, Sec. 2419; Constitution, Sec. 184; State ex rel. Diebold Safe & Lock Co. v. Getchell, 3 N. D. 243, 55 N. W. 585.

The words "current year," used in the statute, mean "fiscal year," or the year computed from the time of one levy until the following levy. Clark v. Lancaster County, 69 Neb. 717, 96 N. W. 598; Johnson v. Becker County, 27 Minn. 64, 6 N. W. 411; Rogers v. Le Suer County, 57 Minn. 434, 59 N. W. 488; Kiichli v. Minneapolis Brush Electric Co. 58 Minn. 418, 49 Am. St. Rep. 523, 59 N. W. 1088; Johnson v. Norman County, 93 Minn. 290, 101 N. W. 180.

Because of the provisions of the specifications and contract, and because of the manner in which the bids were called for and the contract let, the contract is void. Rev. Codes, Sec. 2421; 2 Dill. Mun. Corp. 5th ed. § 807; Wells v. Burnham, 20 Wis. 116.

The public must be protected against collusive contracts, etc. State ex rel. Whedon v. York County, 13 Neb. 57, 12 N. W. 816; Fones Bros. Hardware Co. v. Erb, 54 Ark. 645, 13 L.R.A. 357, 17 S. W. 7.

Bids for such contract and work must be competitive, and all bidders must start on a common ground and bid for a definite object. Ricketson v. Milwaukee, 105 Wis. 591, 47 L.R.A. 685, 81 N. W. 864; Hannan v. Board of Education, 25 Okla. 372, 30 L.R.A.(N.S.) 222, 107 Pac. 646; State ex rel. McMahon v. McKenzie, 9 Ohio C. C. N. S. 105, 29 Ohio S. & C. P. Dec. 115.

Commissioners cannot advertise or call for bids upon various different articles or varieties, and then award contract to lowest bidder on one article or variety.

This does not afford competitive bidding, and a contract so let or made is void. Stocking v. Warren Bros. 134 Wis. 235, 114 N. W. 789; Bluffton v. Miller, 33 Ind. App. 521, 70 N. E. 989; Coggeshall v. DesMoines, 78 Iowa, 235, 41 N. W. 617, 42 N. W. 650; People ex rel. Ream Pav. Co. v. Board of Improvement, 43 N. Y. 227.

No estimate of the probable cost of constructing the courthouse was ever made, and the people and taxpayers have no accurate knowledge of the amount that may be expended by the defendants. Dill. Mun. Corp. 5th ed. § 807, pp. 1213–1215; Diamond v. Mankato, 89 Minn. 48, 61 L.R.A. 448, 93 N. W. 911.

The boards or officers who award such contracts cannot exercise the discretion intrusted, in an arbitrary manner, and without reason reject the lowest bid and accept a higher bid. 2 Dill. Mun. Corp. § 811. p. 1223; Times Pub. Co. v. Everett, 9 Wash. 518, 43 Am. St. Rep. 865, 37 Pac. 695; People ex rel. Coughlin v. Gleason, 121 N. Y. 631, 25 N. E. 4.

The contract in such case should protect the public. Stansbury v. White, 121 Cal. 433, 53 Pac. 940; 2 Dill. Mun. Corp. p. 1213, note.

Wood v. Bangs, 1 Dak. 179, 46 N. W. 586, decided by the territorial supreme court in South Dakota in 1875, is not an authority upon the questions involved in this case. If such decision is correct, the plaintiffs would be without remedy, since they were not a party to any proceedings before the county commissioners. Pierre Waterworks Co. v. Hughes County, 5 Dak. 145, 37 N. W. 733; Dunbar v. Canyon County, 5 Idaho, 407, 49 Pac. 409.

*Chas. E. Wolfe,* State's Attorney, and *Wolfe & Schneller,* for respondents.

There is a clear want of equity in the bill, and the appeal should

be dismissed. Questions should not be litigated, and decided merely to show which lawyer is right. State v. Moody, 15 N. D. 230, 106 N. W. 1135.

The "courthouse building fund" is, in law, the "county building fund." It is the fund authorized by law to be created, and it is the one created. The commissioners have no power to create any other fund, for a similar purpose. Kane v. Hughes County, 12 S. D. 438, 81 N. W. 894; Golding v. Hughes County, 13 S. D. 53, 82 N. W. 1119; Dakota County v. Bartlett, 67 Neb. 62, 93 N. W. 192.

The plaintiffs are guilty of laches. They had full knowledge of all the facts, but waited until the people of the county were without a courthouse,—until all plans and contracts had been made for the construction of a new courthouse, before making any more. Baring v. Erdman, 14 Hazard, Pa. Reg. 129, Fed. Cas. No. 981.

In chancery, objection to the equity of the plaintiff's claim, as stated in the bill, must be taken by demurrer, and not by plea. 6 Enc. Pl. & Pr. 395; Rhode Island v. Massachusetts, 14 Pet. 262, 10 L. ed. 447.

Public injury warrants denial of relief asked in this case. Each individual plaintiff has a legal remedy. Sheldon v. Center School Dist. 25 Conn. 224; Hardesty v. Taft, 23 Md. 512, 87 Am. Dec. 584; Wood v. Bangs, 1 Dak. 179, 46 N. W. 586; 27 Cent. Dig. Cal. 1445–1450, 1463–1471.

Injunction will never be granted where benefits to one party are of but little importance, while it will operate oppressively and to the great annoyance and injury of the other party. Wood v. Bangs, 1 Dak. 179, 46 N. W. 586; Hall v. Rood, 40 Mich. 46, 29 Am. Rep. 528; Stein v. Bienville Water Supply Co. 32 Fed. 876; Boston Rolling Mills v. Cambridge, 117 Mass. 396.

Fisk, J. As disclosed by the complaint, the object of this action is to enjoin the carrying out of a contract for the erection of a new courthouse at Wahpeton, made by the board of county commissioners of Richland county with the defendants Ingemann & Company. The plaintiffs are residents and taxpayers of said county, and as such they assert the right to maintain such suit in behalf of themselves and all other residents and taxpayers of the county who may elect to join with them in the prosecution thereof. That they have such right there is

no doubt. Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292; Storey v. Murphy, 9 N. D. 115, 81 N. W. 23; Fox v. Walley, 13 N. D. 610, 102 N. W. 161.

In Engstad v. Dinnie it was, among other things, said: "The right of a taxpayer to institute an action to enjoin municipal officers from unlawfully dissipating public funds is a right common to all taxpayers, great and small, and mere private interests are not necessarily involved in suits of this character." See also note to Pierce v. Hagans, 15 Ann. Cas. 1173, 1174, and authorities therein cited. We are clear, therefore, that the second ground of the demurrer is untenable.

The only other ground of demurrer is that the complaint fails to state facts sufficient to constitute a cause of action, and this raises a question of more serious import. Do the facts alleged show on their face that plaintiffs are entitled to equitable relief by injunction or otherwise? Certain preliminary observations may here properly be noticed, which are that nowhere in the complaint is actual fraud or corrupt action on the part of any of the defendants charged or claimed, but it is the alleged lack of authority to do the various acts complained of that constitutes the plaintiff's grounds for equitable relief. It is asserted, the correctness of which assertion we think must be conceded, that the construction of the proposed new courthouse involves an extraordinary expenditure of public funds, necessitating a prior favorable vote of the electors of the county, unless, perhaps, as contended by respondents, that there are sufficient available funds, including the tax levy for the current year, to defray the costs thereof. Section 2419, Rev. Codes 1905, grants power to the county commissioners "to provide for the erection and repairing of courthouses," but provides also that "no expenditure for the purpose herein named greater than can be paid out of the annual revenue of the county for the current year shall be made unless the question of such expenditure shall have first been submitted to a vote of the qualified electors of such county, and shall have been approved by a majority of the votes so cast," etc. Our attention is also called by appellants to the provisions of chapter 67, Laws of 1909, which amends certain enumerated sections of the Revised Codes of 1905 relative to the powers of the board in the matter of extraordinary expenditures of public moneys. Among other things, said statute requires that a proposition for the establishing of a building fund

shall be first submitted to a vote of the electors, etc. It is strenuously insisted by appellants that the complaint, when fairly construed, not only shows that sufficient funds were not on hand to carry out such proposed enterprise, but also that the alleged contract entered into for the construction of said courthouse is in contravention of law in several particulars, among other things, that the contract was not let by competitive bidding, nor was any provision made for the collection of an annual tax to pay the interest and principal when due of the indebtedness necessarily created thereby. Furthermore, that the proposition for such improvements was not submitted to a vote of the electors as required. On the contrary, it is just as strenuously insisted by respondents that such complaint discloses on its face that ample funds for erecting such building were on hand, and that the contract is in all respects legal. They also contend that in any event the facts pleaded, on their face, affirmatively show that appellants are not entitled to the injunctional relief prayed for and that the demurrer was therefore correctly sustained.

We are not here concerned with the question of the broad equities or on an application for a temporary injunction, of the case as they may be developed by a trial, but we are merely to determine whether on its face the complaint fairly presents a case calling for equitable cognizance. In other words, do the facts pleaded disclose a want of equity on the part of those taxpayers? Manifestly they are entitled to the relief prayed for, unless it can be said, under the facts alleged, that respondents are proceeding in a legal manner, or that appellants, by lapse of time, have lost their rights to equitable relief by reason of the greater resulting equities in favor of the public.

After mature deliberation we have reached the conclusion that it was error to sustain the demurrer, and our reasons for this conclusion will be briefly stated. We agree fully with appellants' contention that the complaint, when fairly and liberally construed, as it must be, discloses that the board, in letting the contract, failed to proceed according to law. The proposition called for an extraordinary expenditure of public moneys, and should have been submitted to a vote of the people. Sufficient funds were not on hand, nor was any provision made, as required by law, for raising the necessary funds required for the carrying

out of such improvement. Even conceding the correctness of respondent's contention that appellants cannot question the legality of the method whereby the $84,614 building fund was created, we cannot ignore the fact, as alleged, that a large amount thereof was wrongfully diverted from other funds and therefore presumably will have to be restored to the proper fund. Furthermore, it appears that even if such fund *in toto* is available, together with the current levy of taxes for 1911, it is evidently inadequate to complete such courthouse, it appearing from such complaint that the contract, as entered into, does not provide for furnishing such building with the necessary heating and ventilating apparatus, nor with electric wiring, gas fitting, plumbing, vault doors, vault window shutters, counters, bar railings, and furniture. But, aside from these considerations, we are agreed that under the facts alleged, the contract is void because not authorized by the voters of the county. This being true, the complaint states a cause of action, unless, as before stated, it appears therefrom that by lapse of time plaintiffs have lost their right to equitable relief. We are clear that no such situation is presented. While it appears that the work of erecting such courthouse was commenced prior to the institution of this suit, it does not appear how far such work had progressed; nor can it be inferred that such contract has at this time been substantially completed, as the same was not entered into until February 27th last, and by its terms the contractors are given until next August in which to complete their contract. Nor does it appear what portion, if any, of the contract price has been paid by the county. The rule invoked by respondent's counsel, that the equities of the public far outweigh those in favor of these taxpayers, and that irreparable injury will inevitably result from the issuance of an injunction as prayed for, can therefore have no application to the questions here presented. Upon a trial of the cause on its merits it may develop that such rule can and should be successfully invoked.

Order reversed, and the cause is remanded for further proceedings.