Edgar ANDERSON, Norbert Davis, Elmer Hanson, Melvin J. Worrell, and Paul Tastad, Plaintiffs and Appellants,

v.

Leo JEANNOTTE, Arthur Lindbo and Clarence Bye, individually and as members of the Board of County Commissioners of Rolette County, C. A. Berg, individually, and as the County Auditor of Rolette County; and Howard Stormon, individually and as State's Attorney of Rolette County, Defendants and Respondents.

No. 7824.

Supreme Court of North Dakota.

May 19, 1959.

Rehearing Denied May 25, 1959.

Rausch & Chapman, Bismarck, for plaintiffs and appellants.

Duffy & Haugland, Devils Lake, for defendants and respondents.

MORRIS, Judge.

This is an appeal from a judgment of the district court of Rolette County dismissing an action brought by the plaintiffs to enjoin the defendants, who are the majority of the

present board of county commissioners, from taking any further steps to prevent the implementation of a plan for the distribution of the Rolette County memorial fund adopted by the board of county commissioners as formerly constituted. The plaintiffs, who allege that they are taxpayers of Rolette County and bring the action in behalf of themselves and others similarly situated, demand a trial de novo in this court. The controversy, which involves the control of the spending of the money in the Rolette County memorial fund, has been the source of prior litigation that resulted in two former appeals to this court.

The action of Hart v. Bye, N.D., 76 N.W.2d 139, was brought by the plaintiff as a citizen and taxpayer of Rolette County, on his own behalf and on behalf of others similarly situated, against all of the members of the board of county commissioners of Rolette County and the county auditor to enjoin them from carrying out a resolution of the board which provided for the equal division of the memorial fund of Rolette County among the American Legion posts within the county, to be used by them for the purpose of erecting a suitable memorial or memorials or other suitable recognition of the people of the county who lost their lives in the service of their country or rendered distinguished services during World War II. We held that, "Such a disposition of the memorial fund is clearly violative of Chapter 125, SLND 1947 in that it attempts to vest in organizations other than the board of county commissioners the spending of the money in derogation of the specific terms of the statute." Judgment on remittitur, pursuant to our decision, was entered in the district court of Rolette County on April 23, 1956.

On the same day that judgment on remittitur was entered, the board of county commissioners of Rolette County passed a resolution, by a vote of 3 to 2, stating in part that:

" * * * the Rolette County Memorial Fund be apportioned into six

equal shares for the purpose of the erection of Memorials as heretofore set out, and

"Be It Further Resolved, that the within resolution constitute an offer to the American Legion Posts to join with them in the erection of said memorials and upon acceptance thereof by the American Legion Posts and approval by the County Commissioners the same shall become an irrevocable contract on the part of both parties, and

"Be It Further Resolved that in the event any American Legion Post within the County desires to join the Board of County Commissioners of Rolette County in the erection of a memorial in the city, town, village or community in which said American Legion Post is situated, it may submit a plan in writing to the Board setting out the exact place and form the proposed memorial will take and the manner in which it is to be maintained, and

"Be It Further Resolved that nothing herein shall be construed to prevent the American Legion Post from submitting a plan whereby it is proposed that the Board join with a school district or other governmental agency in the erection of an appropriate memorial; and

"Be It Further Resolved that upon submission of a plan for a Memorial as hereinbefore set out the Board of County Commissioners shall consider the same and determine whether or not it is an appropriate memorial within the statute authorizing such memorials and upon being satisfied that the proposed memorial would be a suitable recognition to the servicemen of this county who lost their lives in World War II, the Board shall indicate its approval thereof by resolution and shall authorize the expenditure of monies from the County Memorial Fund for the erection of such memorial; and

"Be It Further Resolved that the American Legion Post make provision

for the perpetual maintenance of said Memorial from their own funds or by such other arrangements for such maintenance, operation and repair as may be made consistent with the laws of this state and to the satisfaction of the Board of County Commissioners, it being the intent to relieve the county of all future responsibility for the maintenance, operation and repair of such memorial, and * * *

"Be It Further Resolved that the title to said Memorials and the property on which said Memorials are to be erected at all times be and remain in the name of the American Legion Post or such other governmental agency with which the Board of County Commissioners and the American Legion shall join in the erection of the said Memorial, and * * *

"Be It Further Resolved that if any one or more of the American Legion Posts of this county shall fail to indicate acceptance of the offer contained herein within one month after the adoption hereof, at a time when such posts are duly chartered as such then the monies contained in the County Memorial Fund shall be reapportioned into as many equal shares as there (are) acceptances of the offer, meaning and intending to provide for the complete disbursement of monies in the County Memorial Fund in the erection of Memorials in conjunction with those American Legion Posts as are willing to join with the Board of County Commissioners."

In June, 1956, John B. Hart, as a taxpayer, filed a second action against the board of county commissioners, again naming the same five members as defendants, in which he alleged that, by a majority vote, the board of county commissioners was proceeding to expend the monies in the Rolette County Memorial Fund in a manner contrary to that judgment and contrary to law. He asked that the defendants be restrained and en-

joined from further proceedings looking toward the dissipation of the fund, and for such further relief as might appear to the court to be just.

When the second action came on for trial, the majority of the board of county commissioners, consisting of three members, appeared in person and by their attorneys who are the attorneys for the plaintiffs in this case. The two minority members filed separate answers, denying any part in the acts complained of in that action. After the trial, and before the case was decided by the district court, one member of the majority, Edward Jollie, had ceased to be a commissioner. He was succeeded by Leo Jeannotte. The trial court ordered judgment for the plaintiff and, on April 15, 1957, judgment was entered enjoining and restraining the defendants from using any part of the memorial fund of Rolette County for division among or use by or on behalf of the American Legion posts of that county, and further enjoining the defendants from using any part of the memorial fund for private purposes or as a donation or loan to any nonpublic body or instrumentality.

The views of the new member of the board, Jeannotte, with respect to this controversy coincided with those of the former minority of the board. Thus the former majority became the minority after trial and before judgment was rendered. On June 4, 1957, the board of county commissioners, by an affirmative vote of the new majority, adopted a resolution rescinding and annulling the resolution of the board dated April 23, 1956, heretofore quoted in part, and other resolutions implementing the plan therein set forth for the distribution among the Legion posts of the Rolette County Memorial Fund, and further stating, "that the Board accepts the judgment of April 15, 1957, as a final decision upon the merits of the issues therein involved and that no appeal therefrom is authorized." Despite this fact, the attorneys for the former majority, including the displaced member, Jollie, filed a notice of appeal from the judgment. The notice of appeal is dated June 20, 1957.

Prior to the arguments on the merits of the appeal in the second case, the plaintiff moved for the dismissal of the appeal on the ground that the questions involved were moot and, in support of the motion, filed a certified copy of the resolution of June 4, 1957, accepting the judgment as a final decision and stating that no appeal therefrom was authorized. We granted the motion to dismiss. Hart v. Bye, N.D., 86 N.W.2d 635.

Before the time for filing a petition for rehearing had expired, the plaintiffs in the present action, Edgar Anderson, Norbert Davis, Elmer Hanson, Melvin J. Worrell, and Paul Tastad, filed in this court a motion for leave to intervene in that action and requesting the court to vacate our opinion dismissing the appeal. This motion was denied by our minute order on October 15, 1957. The appellants petitioned this court for a rehearing, which was denied December 20, 1957. The case was remitted to the district court December 24, 1957.

■ The prayer of the plaintiffs' complaint is "that the action of the County Commissioners, in accepting the decision of the District Court and refusing to authorize an appeal, be held void and that the defendants, and each of them, be enjoined from taking any further steps to thwart the legal process of government and prevent the implementation of the legally adopted plan of distribution of the County Memorial Fund." The first part of this prayer is clearly without merit since the time for appeal from the judgment of the district court of Rolette County of April 15, 1957, has long since expired, and the appeal that was attempted to be taken was dismissed by this court. That dismissal amounted to an affirmance of the judgment. That judgment is no longer subject to attack.

The second part of the prayer for relief, while ostensibly seeking restraint, has the frankly conceded coercive purpose of compelling the presently constituted board of county commissioners to carry out the division of the county memorial fund among the Legion posts of Rolette County and its expenditure in accordance with the plan outlined in the resolution of April 23, 1956. This resolution, and the plan of distribution therein provided, was the issue before the court in the trial of the second Hart v. Bye case, N.D., 86 N.W.2d 635, which resulted in the judgment, long since final, which had the effect of enjoining the board of county commissioners from carrying out the plan embraced in the resolution.

The trial court determined that the plaintiffs herein have no right to maintain this action; that the issues sought to be raised with reference to the validity of the proceedings had by the county commissioners have been finally determined in Hart v. Bye, N.D., 76 N.W.2d 139, and Hart v. Bye, N.D., 86 N.W.2d 635, and that the plaintiffs are not entitled to review and relitigate those issues in this suit. The plaintiffs and appellants now argue that they were not parties to the other suits; that they are different taxpayers from those who previously litigated this controversy and are therefore entitled to their own day in court regardless of the fact that the same issues were previously litigated and determined in actions involving other taxpayers and public officers of the county.

■ The right of a taxpayer to maintain an action to restrain public officers from unlawfully dissipating public funds is a right common to all taxpayers. McKinnon v. Robinson, 24 N.D. 367, 139 N.W. 580; Engstad v. Dinnie, 8 N.D. 1, 76 N.W. 292.

The plaintiffs cite the case of Guenther v. Funk, 67 N.D. 543, 274 N.W. 839, 112 A.L.R. 428, as being applicable, if not controlling, in the situation now before us. That case involved a mandamus proceeding brought by taxpayers and residents of a school district, who were the parents of children of school age, to compel the board of directors of the district to construct a schoolhouse which if constructed would be attended by their children. The action was instituted in the name of the parents and did not purport to be brought in behalf of others similarly situated. After judgment

had been entered directing the issuance of a peremptory writ of mandamus, other taxpaying patrons of the district applied to have the judgment vacated and, upon vacation of the judgment, for leave to intervene. The trial court denied the application and, in the course of the opinion sustaining the trial court, this court said that, "No rights of the appellants were concluded by the judgment rendered in this proceeding. They were not parties, and the judgment is not res judicata against them." In that case, neither the plaintiffs nor the interveners appeared to have been acting in behalf of the public. They were seeking to vindicate private and not public rights. The case is not in point.

The rule applicable here is stated in Freeman on Judgments, 5th Edition, Section 437:

"Where a taxpayer or property owner brings an action against the city, county, or other public corporation or its officers upon a matter of public and general interest to all other taxpayers or property owners of such political subdivision, and the action either expressly or by necessary implication is on their behalf, they are equally bound by the adjudication and a judgment on the merits is a bar to any subsequent proceeding by them or any of them seeking similar relief upon the same facts. The principle of mutuality makes such a judgment or decree equally conclusive in favor of other citizens and taxpayers."

The principle thus enunciated has been applied and variously stated by many courts.

In State ex rel. Davis v. Willis, 19 N.D. 209, 124 N.W. 706, 707, paragraph 4 of the syllabus by the court, we said: "A judgment, duly entered in an action or proceeding of which the court has jurisdiction against a county or its legal representative, in a matter of general interest to all its citizens, is binding upon the latter, though they are not nominally parties to the suit."

The appellate courts of Missouri have repeatedly used this quotation: "In the absence of fraud or collusion, a judgment for or against a municipal corporation, county, town, school or irrigation district, or other local governmental agency or district, or a board or officers properly representing it, is binding and conclusive on all residents, citizens, and taxpayers in respect to matters adjudicated which are of general or public interest, such as questions relating to public property, contracts, or other obligations. The rule is frequently applied to judgments rendered in an action between certain residents or taxpayers and a municipality, county or district or board or officer representing it, it being held that all other citizens and taxpayers similarly situated are represented in the litigation and bound by the judgment in the absence of fraud or collusion. The rule is applicable to persons who have notice of the suit and even to persons without actual notice of the suit." Consolidated School District No. 4 of Green County v. Day, 328 Mo. 1105, 43 S.W.2d 428; Drainage District No. 1 Reformed, of Stoddard County v. Matthews, 361 Mo. 286, 234 S.W.2d 567, 573; Powell v. City of Joplin, 335 Mo. 562, 73 S.W.2d 408.

Williams v. Board of Supervisors of De Soto County, 139 Miss. 78, 103 So. 812, was a taxpayers action against the governing board of the county. Like the case before us, it made its third appearance before the Supreme Court of Mississippi, which said: "We deem it only necessary to say that both of the former cases as well as the present case involve the same cause, and each involved a public question. They were strictly public suits. It is true that the parties actually named as such were the board of supervisors on the one side and certain taxpayers on the other. Nevertheless all other taxpayers concerned were parties on one side or the other by representation according as their interest appeared to them. Actions of this character are governed by the principle that a taxpayer's suit against the governing board of a county or municipality

involving questions of general interest to the taxpayers prosecuted in good faith are binding upon all taxpayers as fully as if they had been made actual parties to the proceeding." Among the many cases supporting the principle under discussion are the following: People ex rel. Castle v. Wright, 8 Ill.2d 454, 134 N.E.2d 269; Barrett v. City of Chicago, 11 Ill.App.2d 146, 136 N.E.2d 564; Delta Fish & Fur Farms, Inc., v. Pierce, 203 Wis. 519, 234 N.W. 881; Driscoll v. Board of County Commissioners of Ramsey County, 161 Minn. 494, 201 N.W. 945; Sauls v. Freeman, 24 Fla. 209, 4 So. 525, 12 Am.St.Rep. 190; State ex rel. Walker v. Gessner, 157 Fla. 798, 26 So.2d 896; City Council of Montgomery v. Walker, 154 Ala. 242, 45 So. 586; McConkie v. Remley, 119 Iowa 512, 93 N.W. 505; Locke v. Commonwealth, 113 Ky. 864, 69 S.W. 763. For general text authority, see 30A Am.Jur., Judgments, Sec. 405; 50 C.J.S. Judgments § 796b; McQuillin Municipal Corporations, 3d Ed., Sec. 52.50.

These plaintiffs have shown no special interest in the subject matter of this litigation. They seek to relitigate public issues that were fully and finally determined adversely to the contentions now made by these plaintiffs in former actions wherein the board of county commissioners of Rolette County was represented by the same counsel that now appear for the plaintiffs. The former adjudications, being untainted by fraud or collusion, are binding on all citizens and taxpayers of the county, including the plaintiffs.

The judgment appealed from is affirmed.

SATHRE, C. J., and STRUTZ, TEIGEN and BURKE, JJ., concur.