BRINKERHOFF v. KING et al., School Board of Wayne County.

No. 3584.   Decided December 21, 1920.   (194 Pac. 659.)

SCHOOLS AND SCHOOL DISTRICTS—BOND ELECTION NOT INVALID AS SUBMITTING MORE THAN ONE QUESTION. Under Comp. Laws 1917, § 4627, relative to school district elections on the question of issuing bonds, section 4629, relative to the form of ballot, and Laws 1919, c. 88, § 1, prohibiting the creation of debts in excess of the current taxes without submitting the proposition to a vote, an election on the question of issuing bonds for the purpose of purchasing school sites, building schoolhouses, supplying them with furniture and apparatus, for improving the school grounds, and refunding outstanding indebtedness, was not invalid as submitting more than one question without opportunity to vote separately.[1]

Original prohibition proceeding by George R. Brinkerhoff

[1] Distinguishing *State ex rel. Horsley* v. *Carbon County*, 38 Utah, 563, 114 Pac. 522.

against V. Emery King and others, as the School Board of Wayne County, Utah.

WRIT DENIED.

*J. T. Hammond,* of Salt Lake City, for plaintiff.

*A. J. Evans,* of Lehi, for defendants.

CORFMAN, C. J.

This is an original proceeding commenced by the plaintiff, as a resident and taxpayer of Wayne county school district, to prohibit the defendants, as the school board of said district, from issuing and selling its bonds voted for at a special election held on the 11th day of September, 1920. The irregularities complained of and relied upon by plaintiff, as shown by his petition and brief herein, are the following:

"(a) The resolution calling said election and the notices given thereof provide that a part of the proceeds of the sale of the proposed bonds should be used in the payment of outstanding notes of the school district, whereas the statute authorizing the calling of an election to vote on the question of issuing bonds does not authorize the issuance of bonds for the purpose of paying outstanding notes of the district. See section 4627, Compiled Laws of Utah **1917.**

"(b) That the resolution calling said election and the notice thereof given by the defendants submitted to the electors of the said school district states several separate propositions, to wit, a proposition to issue bonds to buy school sites and build schoolhouses and furnish the same, to pay outstanding bonds; to pay outstanding notes; but the form of the ballot provided by the defendants for use of the electors at such election required the electors to vote for the several separate propositions as an entirety, and did not permit such electors to express their wishes upon the several separate propositions submitted at such election."

A copy of the ballot above referred to is attached to the petition, made a part thereof, and, in so far as may be pertinent to the issues raised, submitted to the voters the following propositions to be voted upon:

"Shall the Wayne district board of education, Wayne county, Utah, be empowered to issue, negotiate, and sell bonds of the Wayne school district to the amount of $30,000 par value, bearing interest at 5 per cent. per annum, payable annually, for the purpose of raising money for purchasing school sites, for building schoolhouses, and supplying the same with furniture and necessary apparatus, for improving the school grounds and refunding outstanding indebtedness to the amount of. $7,800?

The defendants answered the petition, denying irregularities or illegal purposes, and, as a special defense to the matters complained of in the petition affirmatively and in substance alleged that during the month of March, 1920, the school board of Wayne county regularly and legally called and held an election as required by law, whereat the qualified voters of said district unanimously authorized the said school board to create an indebtedness of $30,000 for the "purpose of raising money for purchasing school sites, for building schoolhouses, and supplying the same with furniture and necessary apparatus, and for improving the school grounds and redeeming outstanding bonds amounting to $1,800"; that at said election the qualified voters of the district voted a 3-mill tax to be collected annually for a period of 10 years for the purpose of raising funds to pay the $30,000 indebtedness authorized, but did not authorize the issuance of bonds for the purpose of raising funds to make the improvements authorized as aforesaid; that thereupon the school board undertook to borrow money with which to carry out the purposes for which said $30,000 indebtedness had been authorized, but, owing to the stringency of the money market, was unable to do so; that thereupon the Intermountain Life Insurance Company offered to take the bonds of said district in the sum of $30,000, provided a special bond election be held for such purpose, and meanwhile would, and did, advance to the district $6,000 for, and which was used by the district in purchasing school sites, schoolhouses, and in supplying the same with furniture and apparatus, and in improving the school grounds; that the bond election mentioned and complained of in plaintiff's petition was therefore called and held in the furtherance of said plan, and for the purpose

mentioned in the ballots voted thereat, in the form shown by plaintiff's petition, and at said election there were 189 votes of the qualified voters of the district cast in favor of said bond issue, and only 15 votes in opposition thereto.

To the defendants' answer the plaintiff filed a general demurrer, thus testing the sufficiency thereof, and also bringing to the test the sufficiency of the grounds complained of and relied upon by plaintiff in his affidavit and petition as invalidating the proposed bond issue and sale by the district.

In the proper consideration of the issues raised we must as a matter of course, first advert to the provisions of our statutes bearing on the subject of bonded indebtedness of school districts.

Section 1, c. 88, Laws of Utah 1919 (which became effective March 13, 1919), provides:

"The board of education of any county school district of the first class * * * may borrow money, issuing therefor negotiable notes or bonds, or otherwise create indebtedness for the maintenance of the schools within such district * * * not in excess of the taxes for the current school year; and any such board of education may borrow money issuing therefor negotiable notes or bonds, or otherwise create indebtedness for the purpose of purchasing school sites and erecting school buildings not in excess of any tax that may have been lawfully authorized or imposed for such purposes, and prior to the collection thereof; but no debt in excess of the school taxes for the current year shall be created by the board of education of any county school district of the first class * * * unless the proposition to create such debt shall have been submitted to a vote of such qualified electors as shall have paid a property tax therein during the twelve calendar months next preceding such election, and a majority of those voting thereon shall have voted in favor of incurring such debt."

It will be seen the foregoing section expressly authorizes the borrowing of money and the issuing of negotiable notes or bonds or to otherwise create indebtedness for the purpose of purchasing school sites and erecting school buildings. It also appears beyond any doubt that at both of the elections held by the district the qualified voters authorized the creation of the indebtedness for which the proposed bond issue and sale is intended to be made.

It is contended and argued by the attorney for the district that the indebtedness authorized, regardless of the forms of the instruments evidencing the same, was for one general purpose, that of providing for and carrying on the educational work of the district, regardless of the fact that in doing so different contingencies might arise and would have to be met that would require separate amounts of the revenue thus raised. We think there is much force in counsel's contention. There can be no doubt but that the primary purpose for creating the indebtedness of $30,000 was for the one common or general purpose of maintaining the school system of the district, although for the one general purpose several specific objects as means of accomplishing it were specified in the resolution and notice calling the election, and also in the ballots as well used in voting for the bonds in question. Comp. Laws Utah 1917, § 4627, provides:

"The board of education may, when in its judgment it is advisable, or shall, when petitioned by a majority of the resident taxpayers of the school district, as appears by the county assessment roll of the last preceding year, call an election in each school representative precinct of the district, and submit to the taxpayers of the district whether bonds of such district shall be issued and sold for the *purpose* of raising money for purchasing school sites, for building or purchasing one or more schoolhouses, and supplying the same with furniture and necessary apparatus, for improving the grounds, and for the refunding and redemption of all or any portion of any bonds outstanding in any such district." (Italics ours.)

Section 4629 provides what the form of the ballot shall be:

"The ballot used at such election shall be furnished by the board of education, and shall express upon its face the questions the board desires to submit to the taxpayers. No informalities in conducting such election shall invalidate the same, if it shall have been otherwise legally conducted."

As we view the provisions of the foregoing sections, the only purpose intended, and the only question submitted to the voters, in holding the election, was the general one of bonding "for the purpose of raising money for purchasing school sites, for building schoolhouses, and supplying the same with furniture and necessary apparatus, for improving

the school grounds,'' and, we may add, ''refunding indebtedness to the amount of $7,800, which was legally authorized'' and incurred under the circumstances for like purposes and authorized by our statutes.

Again, as we read the foregoing provisions of our statutes, there is no requirement, express or implied, that in voting upon the question of a bond issue of a school district for several objects that the specific amount of funds to be devoted to each shall be always separately stated and submitted.

Plaintiff has cited us to the case of *State ex rel. Horsley* v. *Carbon County*, 38 Utah, 563, 114 Pac. 522, as supporting his contention that in the present case the voters did not have the opportunity of voting separately upon several distinct objects and purposes, and therefore the election under consideration was, for that reason, invalid. It must be kept in mind that the case cited by plaintiff was dealing with the subject of the bonding of a county for road building, and that this court then had under consideration the provisions of our statutes more especially applicable to the question of bonding for such road purposes, to wit, Comp. Laws Utah 1907, § 518, which reads:

"The board [county commissioners] shall by order specify the particular purpose for which the indebtedness is to be created."

In the interpretation of the statute then before this court occasion was taken by Mr. Justice Straup, the writer of the opinion, to refer to *Gray* v. *Mount*, 45 Iowa, 591, in which very good reasons are assigned why, under statutes similar to the one then being considered by the court, when there is a union of two distinct objects and two separate appropriations for them, they should not be submitted to be voted upon as one, but separately, so that the voter may express his will as to each independently of the other. However, the rule announced in the Iowa case was not applied by this court in *State ex rel. Horsley* v. *Carbon County, supra*. In the Horsley Case this court decided that where the proposition to be voted upon was to issue $30,000 county bonds, $25,000 to build bridges and $5,000 to build and repair roads, submitted as one general object, the same did not state two

separate and distinct purposes requiring separate submission under the provisions of Comp. Laws Utah 1907, § 518.

As has been pointed out in the present case, the funding of the school district was authorized unanimously in the first instance by the voters for a general purpose, and keeping in mind that the bond election was for like purposes, with the exception of $1,800 intended for the refunding of bonds authorized by the statute, we are of the opinion that the objections raised by the plaintiff are untenable, and that the proposed bond issue and sale should not be interfered with in the present instance under the existing circumstances.

We remark, however, that under our Constitution and statutes the greatest care should be exercised in district school election proceedings held for the purpose of raising revenue through the medium of the issuance and sale of bonds of the district; but mere technical irregularities should not be permitted to interfere with the will of the qualified taxpayers of the district when clearly expressed, as is shown by the proceedings in the present instance.

In the present case we think the plaintiff has failed to point out or assign any legal grounds for adjudging the election held by the district invalid. It is therefore ordered that a writ of prohibition be denied. Costs to be taxed to the plaintiff.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.