JAMES LANG, a Resident, Citizen, and Taxpayer of the City of Cavalier, County of Pembina, and State of North Dakota, Bringing This Action on Behalf of Himself and All Other Taxpayers, Appellant, v. The City of CAVALIER, a Municipal Corporation, J. E. Garvey, as Mayor of the City of Cavalier, S. J. Sveinson, as Auditor of the City of Cavalier, and D. R. Green, as Treasurer of the City of Cavalier, Respondents.

(228 N. W. 819.)

Opinion filed January 15, 1930.

*Shure & Murphy,* for appellant.

*J. E. Garvey (John P. Kyle, of counsel) for respondents.*

NUESSLE, J. The city of Cavalier is a municipal corporation. The defendants Garvey, Sveinson and Green are its mayor, auditor and treasurer, respectively. The plaintiff Lang is a citizen of and taxpayer in the city. He brings this action to restrain the defendant city and its officers from carrying out that certain contract for the installation of an electric light plant and the payment of the cost thereof. The case was tried to the court without a jury. The court made findings of fact and conclusions of law favorable to the defendants and ordered judgment accordingly. The plaintiff appeals from this judgment and demands a trial de novo in this court.

For many years Lang owned and operated the electric plant which supplied light and power to the city of Cavalier. In 1926 Lang sold his plant to the Otter Tail Power Company, a corporation engaged in the manufacture, distribution and sale of electricity. About this time, and probably because of this sale, there was some agitation in Cavalier

directed toward municipal ownership of public utilities. As a result of this agitation an election was held on May 31, 1927, on the question of whether or not the city should purchase or erect and operate an electric plant and distribution system. The vote by a large majority was in favor of the city so doing. On July 26, 1927, an election was called and held to vote on the question of whether the city should increase its debt limit from 5 to 8 per cent of its assessed valuation. The vote was in the affirmative. In the meantime the Fairbanks-Morse Company had been negotiating with the city authorities for the sale by the company to the city of an electric generating plant. A survey of the city was made and its power and light requirements estimated. On the basis of the estimate as thus made, and on the representations of the Fairbanks-Morse Company as to the expense entailed in the operation of a plant such as it was proposed to provide and install, the city and the company on August 24 entered into an agreement under the terms of which the city was to provide a distribution system and a building in which an electric generating plant might be erected and installed, and the company was to furnish and install the plant in the building so provided. The city was to pay therefor the sum of $27,161.40 in fifty-eight equal instalments of $468.30. Such payments were to be evidenced by pledge orders, the first of which was to be payable thirty days after the installation of the plant and the others thereafter at intervals of thirty days until all were paid. Until all of these pledge orders were paid the plant so installed was to be considered as personal property belonging to the company, and if the city failed to pay any order according to the terms thereof, then the company might repossess itself of the machinery and equipment. Pursuant to the estimates as to the electric requirements of the city and its inhabitants and the cost of maintenance and operation of the plant, the city agreed as to the minimum charge that it should make for light and power, and the maximum that it might pay for salaries and labor in the operation of the plant. The city further agreed to create a special fund to be made up out of the net profits resulting from the operation of the plant, to keep the same intact for use in payment of the pledge orders, and to operate the plant until they were paid. It was also expressly stipulated that the city should not be

held liable in any way on account of the purchase of said plant other than for the monthly payments thus to be made out of any net profits resulting from its operation. An ordinance was duly enacted establishing rates and creating a special fund pursuant to the terms of the contract entered into with the Fairbanks-Morse Company. Thereupon the city procured a site, began the erection of the building to contain the plant and the distribution system, and the company began to assemble machinery and equipment and to erect and install the same. On September 29 an election was held upon the question of the issuance of not to exceed $16,000 worth of bonds, the proceeds of which were to be used in the erection of the building and distribution system. The proposition carried. On September 28 the instant action was begun, but service of the papers therein was not made until September 30, after the bond election had been held. The plaintiff also applied for an order pendente lite restraining the defendants from going forward under the contract. The hearing on the application for this order came on to be heard in October and the matter was fully considered. The trial court denied the application. In the meantime the bonds voted at the election on September 29 were issued and sold, and the city used the proceeds thereof to pay for the building and distribution system. The generating plant was installed and at the time the instant action came on for trial the city was operating the plant and distributing current over the system. The net profits over the expense of operation were more than sufficient to meet the monthly payments which the city had contracted to make. The plaintiff now seeks to enjoin the city from proceeding further pursuant to the terms of the contract, contending that the city threatens to expend public money under a void and ultra vires contract; that it has exercised or attempted to exercise a power not conferred upon it to construct a light plant in a manner other than that prescribed by the statutory enabling act; that the obligations arising out of such transactions are in excess of the debt limit fixed by the Constitution; that the bonds issued by the city to provide money for the building of the transmission system were invalid and void; that the contract is invalid because of the failure of the city to make an appropriation for the moneys to be expended under it; that the elections which were conditions precedent to the exercise of the

power to acquire an electric system were not legally conducted. On the other hand, the city contends that in entering into the contract and in carrying out the terms thereof it was and is acting wholly within its power; that the plaintiff is not a proper party to bring the action; that there is a defect of parties defendant in that the Fairbanks-Morse Company is not joined.

At the outset we will consider the defendants' challenge to the right of the plaintiff to institute this action. Defendants' contention is that the plaintiff has not shown any damage to himself as an individual that will be likely to result as a consequence of the city's entering into the contract with the Fairbanks-Morse Company. It seems to us that there is no ground for the challenge thus interposed. The plaintiff is a citizen and taxpayer of the city of Cavalier. He complains that the city has entered into a contract with the Fairbanks-Morse Company without authority of law, and, as a result of that contract, is about to unlawfully expend and dissipate the funds of the city and incur a debt contrary to the prohibition of the Constitution and of the statute. If this be so, plaintiff, as a taxpayer, has a right to bring the action in his own behalf and on behalf of all other taxpayers. He need not show any interest other than that which he has as a taxpayer, or any damage or injury to him other than that which he will suffer as a taxpayer in common with all other taxpayers. He has the right as a taxpayer to have his complaint heard. See Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292; Storey v. Murphy, 9 N. D. 115, 81 N. W. 23; Roberts v. Fargo, 10 N. D. 230, 86 N. W. 726; Hart v. Wyndmere, 21 N. D. 383, 131 N. W. 271, Ann. Cas. 1913D, 169; McKinnon v. Robinson, 24 N. D. 367, 139 N. W. 580; Anderson v. International School Dist. 32 N. D. 413, L.R.A.1917E, 428, 156 N. W. 54, Ann. Cas. 1918A, 506; Bartelson v. International School Dist. 43 N. D. 253, 174 N. W. 78; Weeks v. Hetland, 52 N. D. 351, 202 N. W. 807. The defendants further contend that even though Lang as a taxpayer might properly have brought the suit had he acted with due diligence, nevertheless in the instant case he is estopped by reason of his action and conduct respecting the contract in question both prior to and after it was entered into by the defendant city. Defendants urge that the record clearly establishes that the plaintiff instituted the movement which resulted in the

city ultimately entering into the contract complained of, and thereafter stood by and permitted bonds to be issued and sold and the money thus obtained to be used in the erection of a building and distribution system and permitted the Fairbanks-Morse Company to go forward with the erection of the generating plant. We think, however, that since the plaintiff is vindicating the rights of the public generally—that is, those of all other taxpayers as well as his own—the mere fact that he himself may have been dilatory, if in fact he was, cannot estop him from bringing the action. See Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292, supra; Storey v. Murphy, 9 N. D. 115, 81 N. W. 23, supra.

A municipal corporation is an agency of the state. It is purely a creature of statute. Constitution, § 130. It takes its powers from the statutes which give it life and has none which are not either expressly or impliedly conferred thereby or essential to effectuate the purposes of its creation. In defining its powers the rule of strict construction applies, and any doubt as to their existence or extent must be resolved against the corporation. Stern v. Fargo, 18 N. D. 289, 26 L.R.A. (N.S.) 665, 122 N. W. 403; Weeks v. Hetland, 52 N. D. 351, 202 N. W. 807; Dill. Mun. Corp. 5th ed. §§ 237, et seq. But the existence and extent of a municipal corporation's powers having been determined and measured the rule of strict construction no longer applies and the manner and means of exercising those powers where not prescribed by the legislature are left to the discretion of the municipal authorities. This is the purport of the statute, § 3600, Comp. Laws 1913. In this connection see Dill. Mun. Corp. 5th ed. § 239; 43 C. J. 193, et seq. The foregoing rules must be borne in mind in weighing the merits of the plaintiff's challenge to the contract here in question.

Section 183, Constitution of North Dakota, fixes the debt limit of cities at 8 per cent of the assessed value of the taxable property therein, and then, as amended (see page 258, Sess. Laws 1921) provides that "any . . . city by majority vote may issue bonds upon any revenue producing utility owned by such . . . city, or for the purchasing or acquiring the same, or building or establishment thereof, in amounts not exceeding the physical value of such utility, industry or enterprise," and further provides that bonds so issued shall be excluded in estimating the indebtedness which a city may incur. Section 3599, subdivi-

sion 75, Comp. Laws, 1913, provides that the city council shall have the power to purchase, erect, lease, grant, manage and maintain electric light and power plants and to supply the same for municipal and commercial purposes and to pass all ordinances which shall be necessary for their maintenance, management and control. This section was enacted as chapter 75, Sess. Laws 1913. See also chapter 34, Sess. Laws 1921. Chapter 255, Sess. Laws 1923; empowered cities to purchase, construct or erect high tension electric transmission lines, and provided that the cost of such lines might be paid through special assessments or through bonded indebtedness. A twin statute, chapter 256, Sess. Laws 1923, empowered cities to purchase and construct light, heat and power plants and pay for the same by means of special assessments. Chapter 197, Sess. Laws 1927, amended chapter 255, Sess. Laws 1923. As amended the first section thereof reads as follows: "Any city . . . is authorized and empowered to purchase, erect, operate and maintain, enlarge, improve and extend, or lease . . . any electric light and power plant . . . or any electric distribution system . . . in the manner herein provided." The second section of the act forbids any city to "purchase, erect or substantially enlarge, improve, extend, or lease from others" such improvements until authorized to do so at an election by a majority of the voters voting thereat. The fourth section of the act provides that "Any such city, village or town *may* pay the cost of purchasing, erecting . . . any such plant, system or line, or any part thereof, either by issuing special assessment warrants as hereinafter provided, or by issuing bonds of such municipality as hereinafter provided, or partly by such special assessment warrants and partly by such bonds."

The defendants rely upon § 3599, subdivision 75, supra, as authorizing and empowering them to enter into the contract with the Fairbanks-Morse Company which is here under attack. Plaintiff concedes that this statute constitutes a general grant of power to municipalities to purchase, erect and maintain electric light and power plants and contains no direction as to the method of payment therefor. He insists, however, that in the exercise of this power they are circumscribed by constitutional restrictions and subsequent legislative enactments. In this behalf he points to § 183 of the Constitution, referred to above, and

to chapter 197, Sess. Laws 1927. He insists that § 183 defines the method that must be followed by cities in incurring obligations secured wholly by public utility properties and that the statute, chapter 197, defines the method that cities must follow in undertaking the ownership and operation of electric light plants, and that, as a consequence, such plants must be paid for either by the issuance of bonds or by the levying of special assessments, or by a combination of these two methods. Plaintiff's argument in this regard is that this latter enactment by specifying such methods excluded all others and that therefore the defendants acted without and beyond any power conferred on the city in entering into the contract in question. On the other hand, the defendants insist that these constitutional and statutory provisions are permissive only and not exclusive; that the constitutional provision was adopted in order to differentiate municipal indebtedness based upon the security of public utility properties alone, from municipal indebtedness for which the cities must pay through the exercise of the taxing power, and to enable cities to issue bonds on the security of public utility property. Defendants further insist with reference to chapter 197 that the legislature enacted this statute and the statutes which it superseded primarily for the purpose of enabling cities to erect public utilities by means of special assessments.

The Constitution, § 130, requires that the legislature restrict the power of municipal corporations as to borrowing money and contracting debts. In so far as the provisions upon which the plaintiff relies do this, they are undoubtedly restrictive, but we cannot believe either that the people by their adoption of the amendment to § 183 of the Constitution or the legislature by the enactment of chapter 197, intended to limit cities to the means thereby provided in acquiring public utilities. It is to be noted that neither chapter 197 nor the statutes which it supersedes in any way refer to the original statute, § 3599, supra. Chapter 197 provides that cities *may* pay for such public utilities in the manner therein set forth. Surely a city having the general power to own and operate such a public utility was not by this statute forbidden to acquire such utility by gift. Nor can we believe that it was intended thereby to forbid a city to purchase such a utility for cash if it had funds in its treasury otherwise lawfully available. Likewise it seems

to us that these provisions cannot be said to prohibit a city from creating a fund, such as the contract here in question contemplates, out of which a public utility may be purchased. Though it be conceded that the Constitution, § 183, supra, prescribes and defines the character of the obligations secured solely by public utility properties which a city may issue, and chapter 197, Sess. Laws 1927 prescribes and defines the character of the indebtedness which a city may incur in order to provide a public utility, nevertheless neither the constitutional provision nor the statute above referred to purport to deny cities the right to purchase or erect such utilities where this can be done without incurring any debt or obligation. Thus whether the contract here in question was, on account of the debt limit, beyond the power of the city to make, will be determined by the answer to the question next raised by the plaintiff as to whether such contract resulted in an indebtedness to the city within the meaning of that term as used in the constitutional restriction.

The Constitution, § 183, provides that "The debt of any county, township, city . . . shall never exceed five per centum upon the assessed value of the taxable property therein; provided, that any incorporated city may, by a two-thirds vote, increase such indebtedness three per centum on such assessed value beyond said five per centum limit." The city of Cavalier at an election called for that purpose voted to increase its debt limit to 8 per cent. At the time the city entered into the contract with the Fairbanks-Morse Company it had an outstanding indebtedness of $2,600. The contract contemplated that the city should incur further indebtedness in the way of bonds to the extent of $16,000 in order to erect a distribution system and a building in which to house the plant. These bonds were issued and are now outstanding. The assessed valuation of the city was $470,131. Therefore the maximum debt the city might incur (8 per cent of this amount) was $37,610.48. The contract called for the payment of $27,161.40. So the plaintiff contends that by entering into the contract the city incurred an indebtedness of $8,150.92 in excess of the maximum amount in which it might become indebted, and, consequently, the contract was ultra vires and void. The point thus made turns on the answer to the question as to whether the amount to be paid under the contract constitutes a debt within the prohibition as contained in section 183 of the Constitution.

Looking to the contract we find that among other provisions it stipulates that the purchase price to be paid thereunder for the electric plant ". . . is not a general obligation of the city of Cavalier, but a special obligation, payable only from the net revenues of the city's light plant. . . .

"The said Fairbanks-Morse Company is so certain that an electric generating and distribution system under city direction and control can be satisfactorily and profitably operated in this city that they would furnish all of the machinery and equipment, and erect, construct and install an electric generating plant in and for the city of Cavalier of the kind and quantity and in the manner specified in this agreement, and rely wholly on the net profits derived from the operation of said plant for the purchase price of said plant; it being contemplated that such net profits, over and above all operating expense will pay for said generating plant in five years from the date said plant is put in operation, and relying upon these assumptions this agreement was and is entered into . . . it being the intent of both parties hereto that the orders herein above described (monthly pledge orders) shall be paid from the revenue of the plant to be erected and installed under this proposal. . . .

"Any stipulations or provisions in this agreement to the contrary notwithstanding, it is not the intention of the parties hereto that this agreement shall in any manner increase the indebtedness of the city of Cavalier, but what is intended on behalf of said city is to make it possible, as far as the law will permit, for the Fairbanks-Morse Company to install an electric generating plant in the city of Cavalier and to have the same operated under the direction and control of the city council and under the rates specified in this agreement and without competition from any other electric light or power company until the net profits from such operation will pay to the Fairbanks-Morse Company the sum of money herein specified, after which time the said generating plant will become the absolute property of the city of Cavalier. . . .

"The city of Cavalier, council, and other officers of the city, however, in executing this agreement in the name of the city intend to bind the city and the city council to the fullest extent possible under the law in

order to carry out the purpose and intention of this agreement and expressed herein, but in no event or under no consideration are either or any of the councilmen or other city officers who may as such officers be a party to this agreement to be held individually liable under or on account of this agreement. . . .

"That the title and ownership of the machinery or materials herein specified shall remain in the company until final payment therefor has been made in full . . . ."

The contract further provides that in case of default of the city in making any of the payments when due the company may, at its election, declare the full amount to become immediately due and payable, and authorizes the company in that event to repossess itself of the property and sell the same in the manner provided for under conditional sales of personal property. The plaintiff contends that this contract is merely a subterfuge resorted to for the purpose of evading the constitutional safeguard against excessive indebtedness; that regardless of the terms of the contract and the verbal devices employed therein, the electric plant becomes the property of the city and the city becomes obligated to pay the purchase price thereof; that though a special fund is created out of the proceeds from the sale of light and power, such proceeds are the property of the city and thus the city's property is to be used in discharging the obligation; that in case of default at any time, even though the city is not generally liable, the property may be repossessed and sold, and where a portion of the purchase price has been paid, to that extent, at least, the city's property is taken to discharge the obligation. On the other hand, the defendants contend that there is no obligation to discharge which the taxpayers may be called upon to provide funds; that the property does not become the property of the city until it is fully paid for, and that the special fund created out of the earnings of the property is analogous to a special assessment fund created by the users of light and power who are benefitted thereby, and that no indebtedness within the meaning of the constitutional provision is at any time incurred.

The question thus presented is one which has never been directly passed upon in this jurisdiction. The plaintiff, however, cites and relies upon the cases of State ex rel. Board of University & S. Lands v.

McMillan, 12 N. D. 280, 96 N. W. 310 and Wilder v. Murphy, 56 N. D. 436, 218 N. W. 156. We do not think that these cases sustain his contention. In the former case the legislature had authorized the boards of trustees of certain state educational institutions to issue bonds for such sums of money as might be required to erect buildings, the bonds to be designated as the bonds of the institutions and to be paid from interest and income derived from institutional lands. The act expressly provided that such bonds should not be obligations of the state. The plaintiff challenged the constitutionality of that act on the ground that it authorized the incurring of a state obligation in excess of the constitutional debt limit. The court held that, notwithstanding the provisions of the statute to the contrary, these obligations were in fact obligations of the state, and since, so considered, the act authorized the creation of a state debt in excess of the constitutional limit the act was void. In that case, however, the bonds were to be paid from the interest and income derived from lands belonging to the state and thus were charges against the property of the state and this was the basis for the court's holding. In the case of Wilder v. Murphy, supra, a similar challenge was made to an act authorizing the state board of administration to erect dormitories at certain of the state institutions. The act provided that the rentals from the dormitories to be erected and from other dormitories belonging to the institutions could be pledged, but that the state should incur no liability by reason of the exercise of the authority granted. It was held that the authority to pledge the income from all the dormitories, both those about to be erected and those already in existence, was authority to pledge the income of the state and so would result in the creation of a debt within the meaning of the constitutional prohibition. The Wilder Case, however, recognized the distinction between an obligation secured by a pledge of property theretofore belonging to the state and an obligation secured by a pledge of the revenues resulting solely from improvements purchased or erected. We there said: "It may be, but as to this we express no opinion, that the theory for which the defendants contend in this respect would fit the case if no property of the state, neither the sites nor the dormitory income, were conveyed or pledged and if the contracts made by the board of administration with the institutional building corporation were for

the purchase of dormitories erected on lands not belonging to the state, to be paid for wholly out of the income from such dormitories so purchased." So the opinions in both the McMillan and Wilder Cases were grounded upon the proposition that the obligations there considered were debts of the state because property theretofore belonging to the state was pledged to their payment. For like cases, see Joliet v. Alexander, 194 Ill. 457, 62 N. E. 861; Leonard v. Metropolis, 278 Ill. 287, 115 N. E. 813; Voss v. Waterloo Water Co. 163 Ind. 69, 66 L.R.A. 95, 106 Am. St. Rep. 201, 71 N. E. 206, 2 Ann. Cas. 978; Baltimore v. Gill, 31 Md. 375; Browne v. Boston, 179 Mass. 321, 60 N. E. 935; Palmer v. Albuquerque, 19 N. M. 285, L.R.A.1915A, 1106, 142 Pac. 929. In the instant case, however, a consideration of the contract discloses that no property of the city is pledged. No money derived from taxation is to be used in building up the special fund out of which the pledge orders are to be paid. It is true that this fund is created out of the receipts arising from the operation of the plant which was purchased, but it seems to us that the fund is at least analogous to a special assessment fund and the obligation to be paid may be likened to a special assessment obligation. This court has heretofore held that obligations payable out of special assessments are not considered public debts within the meaning of the term debt as used in the constitutional prohibitions against incurring indebtedness. See Wilder v. Murphy, 56 N. D. 436, 218 N. W. 156; State ex rel. Board of University & S. Lands v. McMillan, 12 N. D. 280, 96 N. W. 310, supra; Vallelly v. Park Comrs. 16 N. D. 25, 15 L.R.A.(N.S.) 61, 111 N. W. 615. The purpose of the provision as contained in § 183 of the Constitution limiting the debt of certain municipalities "is to prevent such municipalities from improvidently contracting debts for other than ordinary current expenses of administration and to restrict their borrowing capacity." Anderson v. International School Dist. 32 N. D. 413, L.R.A.1917E, 426, 156 N. W. 54, Ann. Cas. 1918A, 506. Such provisions are intended "to serve as a limit to taxation and as a protection to taxpayers." 6 McQuillin, Mun. Corp. 2d ed. § 2364. There is nothing inconsistent with these purposes in the contract made by the city of Cavalier with the Fairbanks-Morse Company.

Though the question we have been considering is novel in this juris-

diction, much authority thereon may be found among the decisions of other courts, and an examination of these cases discloses that while there is some dissent, nevertheless the great weight of authority is to the effect that a municipality does not create an indebtedness within the purview of prohibitions against incurring indebtedness by purchasing property to be paid for wholly out of the income therefrom with no general liability. See Shields v. Loveland, 74 Colo. 27, 218 Pac. 913; Fox v. Bicknell, 193 Ind. 537, 141 N. E. 222; Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004; Kasch v. Miller, 104 Ohio St. 281, 135 N. E. 813; Butler v. Ashland, 113 Or. 174, 232 Pac. 655; Barnes v. Lehi City, — Utah, —, 279 Pac. 878; Winston v. Spokane, 12 Wash. 524, 41 Pac. 888; Uhler v. Olympia, 87 Wash. 1, 151 Pac. 117, 152 Pac. 998; Connor v. Marshfield, 128 Wis. 280, 107 N. W. 639; notes in 37 L.R.A.(N.S.) 1058, and L.R.A.1917E, 437; 44 C. J. 1131. Authorities to the contrary are Feil v. Coeur D'Alene, 23 Idaho, 32, 43 L.R.A.(N.S.) 1095, 129 Pac. 643; Ottumwa v. City Water Supply Co. 59 L.R.A. 604, 56 C. C. A. 219, 119 Fed. 315; Lesser v. Warren, 237 Pa. 501, 43 L.R.A.(N.S.) 839, 85 Atl. 839.

The plaintiff contends that, in any event, the instant case is identical in principle with the McMillan and Wilder Cases, for the reason that if the special fund out of which the contract payments are to be made is created from the earnings of the electric plant, these earnings are made possible only through the use of the distribution system belonging to the city which was built with the proceeds of bonds that must be paid out of tax revenues from the city, and therefore the pledge orders are in fact pledges of city property. We think, however, that this contention cannot be sustained. It is true that the city built and owns the distribution system, but as it stands without a generating plant it is useless and without value. The electrical energy must be procured somewhere and if the city itself sees fit to generate it without expense to the taxpayers in the manner contemplated by the contract there is no reason why the net proceeds made available from the sale thereof should not be put into a special fund. By doing this no property of the city is pledged and no property of the city will be paid to the Fairbanks-Morse Company. We have heretofore referred to that portion of § 183 of the Constitution which authorizes municipal corporations

to issue bonds on the security of public service properties and which provides that bonds so issued shall be excluded in estimating the indebtedness which a city may incur. This provision is pertinent and persuasive on the question now under examination and confirms us in the opinion above expressed. The people of the state in adopting it must have contemplated that obligations issued against public service properties are not to be considered as debts within the meaning of the constitutional prohibition against incurring indebtedness.

The contention that the contract with the company results in a debt beyond the constitutional debt limit cannot be sustained.

Plaintiff seeks to challenge the validity of the bonds issued for the purpose of building a distribution system. The defendants contend, and the trial court so held, that this issue was not raised by the pleadings. The plaintiff in that behalf relies upon ¶ 13 of his complaint wherein he alleges:

"That under the terms and conditions of said proposal by Fairbanks-Morse Company the said city of Cavalier is required to erect at their own cost and expense a distribution system and to purchase a site and building for said electric light and power plant and that said city of Cavalier proposes to pay for said distribution system, site and building the sum of sixteen thousand dollars ($16,000) and to issue bonds of the city in payment thereof, without first having legally submitted the same to the vote of said city as by law required."

And points out that the allegations of this paragraph were specifically denied in the answer. We are inclined to agree that the issue was not raised and was not before the trial court for disposition. The allegations of paragraph 13 above quoted upon which the plaintiff relies, are contained within the last three lines of the paragraph. Nowhere in the complaint is there any allegation of fact from which any conclusion respecting the validity of the bonds can be drawn. The allegation amounts to no more than a statement of a conclusion of law. An examination of the whole complaint discloses that the action is one to enjoin the carrying out the contract with the Fairbanks-Morse Company and not to in any way attack or restrain the city of Cavalier from proceeding with the bond issue. In ¶ 14 of the complaint, plaintiff alleges:

"This plaintiff further alleges that unless prevented by order and

injunction of this court the city council will proceed to carry out the terms and conditions of the proposal and contract entered into with the Fairbanks-Morse Company and to use the funds derived from the earnings and profits of said electric light plant to pay the said Fairbanks-Morse Company for the installation of said machinery in accordance with said contract and that said city will be mulct in damages and great loss and damage will occur to its citizens unless this court shall issue the injunction preventing the mayor and city council of the city of Cavalier from entering into said contract with said Fairbanks-Morse Company and from using the funds derived from the profits of said plant in payment of the purchase price of the material specified in said specifications and contract of said Fairbanks-Morse Company as submitted to the city of Cavalier as hereinbefore alleged and that said city will issue its bonds for the erection of a power house and distribution system for carrying out the terms and conditions of said invalid contract."

And in his prayer for relief he prays only for an order restraining the carrying out of the terms and conditions of the contract and the paying of any public money to the company.

But conceding that the issue was and is properly before the court, we are of the opinion that the plaintiff has not assumed the burden and established the invalidity of the bonds. The plaintiff is not in a position to receive the greatest consideration at the hands of the court. He had notice of the election. He voted thereat. Though the summons in this action is dated prior to the day of the election no service thereof was made until after the election was held. Plaintiff did not seek to restrain the issuance of the bonds. He took no exception to the proposed bond issue, excepting as is set forth in ¶ 13 of his complaint quoted above. The bonds were issued, sold, and the proceeds thereof were expended in the erection of the improvement. Under these circumstances the statute under which they were issued will not be construed as strictly nor the proceedings taken thereunder scrutinized as closely as would be the case were the plaintiff seeking to restrain the issuance of the bonds. See Stern v. Fargo, 18 N. D. 289, 26 L.R.A. (N.S.) 665, 122 N. W. 403. Plaintiff's attack on the bond issue is directed to three propositions: First, that in the proceedings prelimi-

nary to the calling of the election to vote upon the question, and in the notice of election, and in the ballots voted at such election, the question was improperly stated, to wit.: "Shall the city . . . issue its bonds in the amount *not to exceed* $16,000 . . . ." And, therefore, the election was void because the question thus stated was indefinite and because it was attempted to delegate to the city council a power residing wholly in the electors. Second, that the notice of election does not specify the interest rate and the purpose and nature of the bonds. Third, that the election was not properly conducted because it was held at one central voting place instead of at three voting places, one in each of the three wards of the city. In behalf of his first proposition, plaintiff relies upon the cases of Stern v. Fargo, supra, and Kerlin v. Devils Lake, 25 N. D. 207, 141 N. W. 756, Ann. Cas. 1915C, 624. Plaintiff's attack on this ground is predicated on the assumption that the bonds were issued pursuant to the provisions of chapter 197, Sess. Laws 1927. Were this assumption warranted, doubtless the cases above cited and upon which he relies, would lend support to his contention. But as we read the record it seems clear that the bond issue in question and all of the proceedings incident thereto were under the provisions of chapter 196, Sess. Laws 1927. The preliminary resolution, the notice, and the ballot, all conform to the requirements of this chapter, and thus there is no ground for the plaintiff's attack. As to the second proposition, the statute, chapter 196, supra, likewise defeats it. The notice of election contains all of the requirements of § 9 thereof. As to the last proposition, no contention is made that there was any fraud in connection with the election; nor that notice was not given of the election and the time and place where the same would be held; nor that the electors generally did not participate in the election. This being so the election was, at most, irregular and not void. See Kerlin v. Devils Lake, supra.

The plaintiff next contends that the contract in question is invalid because the payments to be made thereunder were not budgeted and no appropriation was made therefor as required by the statute, §§ 3676 to 3680, inclusive, Comp. Laws 1913, as amended by chapter 188, Sess. Laws 1927, and the "City Budget Law," §§ 3684al to 3684a13, inclusive, Supplement, (chapter 169, Sess. Laws 1925) as amended by chapter 189, Sess. Laws 1927. These statutes contemplate that cities

shall, at a stated time in September, budget the anticipated items of expense for the current year and make appropriations therefor. They are likewise required to determine their "Net Current Resources" for the year, to wit: unencumbered cash on hand, uncollected collectible taxes outstanding, and estimated income from sources other than direct property taxes. The budget having thus been prepared, submitted and approved, they must then make the annual tax levy in such amount as shall be required to meet the budget items of expense, taking into account the net current resources. Sections 3679, supra, and 3684a9, as amended, supra, both provide that no contract shall be made and no expense shall be incurred by a city or any officer or department thereof unless an appropriation shall have previously been made concerning such expense, except in certain cases not here material. Section 3684a12, provides:

". . . No new or unusual expense shall be incurred or permanent contract made or salary increased until an appropriation therefor has been made by the council of the municipality."

These provisions are "mandatory and prohibitive and no contract requiring a disbursement of city funds can be made by the city council and no expense can be incurred by any city officer or officers unless a previous appropriation has been made covering the expense involved in the same." Roberts v. Fargo, 10 N. D. 230, 86 N. W. 726; Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292. The plaintiff contends that any revenue that may result to the city of Cavalier from the sale of light and power is income accruing to the city, constituting a portion of its net current resources, and that the same must be taken into consideration in making up the budget and in subsequent proceedings, and that any expenditure to be made in complying with the contract with the Fairbanks-Morse Company, whether the same be out of the general funds of the city raised by taxation or out of a special fund arising from the sale of light and power, is a corporate expenditure and must be included within the budget and appropriation be made therefor. In other words, his contention is that the contract in question calls for the expenditure of funds belonging to the city, and the money to make such payment must be appropriated in the same manner as every other item of expense. The defendants admit that no provision was made pursu-

ant to the budget and appropriation statutes for the money to be paid under the contract for the generating plant or for the maintenance thereof. They contend, however, that these payments are not within the purview of the statutes.

We have held above that the contract with the Fairbanks-Morse Company is valid as against the challenge that it is unconstitutional because it creates a debt within the meaning of that term in the provision limiting municipal indebtedness. The contract contemplates that the property purchased shall not be the property of the city until the same is fully paid for. It contemplates that the proceeds arising from the sale of light and power generated by the plant shall be covered into a special fund to be used for particular purposes and will not become a part of the general funds of the city. Those purposes are limited and defined and are exclusively for the carrying on of the project. The contract further contemplates that there shall be no general liability on the part of the city on account thereof and that in no event shall the property or income of the city, either that derived from taxation or otherwise, be used in making the payments called for by it. The city is under no obligation on account of the contract other than to operate the plant in accordance with its terms. Thus the fund is analogous to a special assessment fund. The purpose of the budget law and of the other statutory provisions pertaining to the budgeting of municipal income and municipal expense and to the making of appropriations for payments to be made in carrying on the city government, is to safeguard the taxpayers of the city and to lessen the possibility of improvident expenditures. These statutes are concerned only with contributions to and payments out of funds made up or replenished by general taxation. See § 3678, Comp. Laws 1913, supra; Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292, supra; Barnes v. Lehi City, — Utah, —, 279 Pac. 878, supra; Pawhuska v. Pawhuska Oil & Gas Co. 118 Okla. 201, 248 Pac. 336. See also in this connection State ex rel. Olson v. Jorgenson, 29 N. D. 173, 150 N. W. 565; First Nat. Bank v. Olsness, 48 N. D. 758, 186 N. W. 751; Davis v. McLean County, 52 N. D. 857, 204 N. W. 459; State ex rel. Bauer v. Nestos, 48 N. D. 894, 187 N. W. 233, 619; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.1918B,

156, 156 N. W. 561, Ann. Cas. 1918A, 583; State ex rel. Stearns v. Olson, 43 N. D. 619, 175 N. W. 714; Minot Special School Dist. v. Olsness, 53 N. D. 683, 45 A.L.R. 1337, 208 N. W. 968; Wirtz v. Nestos, 51 N. D. 603, 200 N. W. 524. Therefore, these budgeting provisions have no application to the contract here in question.

Lastly, the plaintiff contends that the question as to whether the city should undertake the ownership of an electrical system was not properly submitted to the electors and, therefore, the city had no authority to erect the plant in question. This contention is predicated upon the wording of the notice of election and the ballot used at the election. The notice of the election held in May, 1927, for the purpose of voting upon the question as to whether the city of Cavalier should undertake the ownership of its light plant, stated the question to be voted upon as follows:

"Shall the city of Cavalier purchase or erect and operate and maintain an electric light and power plant and distribution system for the purpose of furnishing electric energy for heat, light and power purposes for said city and its inhabitants and industries."

The official ballot used at the election was worded in the same way. Plaintiff contends that this notice and this ballot were dual in character and submitted a double question to the electors, and, therefore, the election was void.

In Stern v. Fargo, 18 N. D. 289, 26 L.R.A.(N.S.) 665, 122 N. W. 403, supra, this court said that under our system of elections "every elector must be given an opportunity to vote for or against any candidate or any proposition independent of and separate from his vote for or against any other candidate or proposition." That is, any proposition to be voted upon must be submitted to the voters in such a way as not to involve two or more distinct and unrelated questions. Logan v. Bismarck, 49 N. D. 1178, 194 N. W. 908. Was the rule thus laid down transgressed by reason of the manner in which the question was submitted to the electors of the city of Cavalier? Plaintiff insists that it was and particularly so in view of the requirements of § 7 of chapter 197, Sess. Laws 1927.

We have heretofore quoted the pertinent portions of §§ 1 and 2 of this act. Under the provisions of these two sections cities are generally

empowered to operate and maintain electric light and power plants, but before they may acquire them or make substantial improvements on plants which they own, or lease plants from others, the question must be submitted to the electorate. Section 3 of the act requires that before any city shall sell or lease any such plant owned by it, the question of so doing shall be submitted to a vote. Section 4 of the act sets out the manner in which the cost of acquiring or improving such plants may be financed. Section 6 makes provision for the issuance of the bonds authorized by § 4 and prescribes the procedure that shall be followed in issuing the same, among other things requiring that an election shall be held upon the question after notice given. Section 7 on which the plaintiff relies, provides that "any or all of the provisions and questions to be voted upon as specified in §§ 2, 3 and 6, may be submitted at one and the same election, and upon one ballot, but the ballot shall state each of said propositions separately."

We are of the opinion that the provisions of this section neither add to or detract from the rule in the Stern Case. Under § 6 of the act only one question can arise, that is, as to whether bonds shall be issued. Under § 3 of the act but two questions may arise; that is, as to whether a city shall sell its plant or whether it shall lease it. The provisions of this section plainly contemplate that these two questions shall be considered separately. The legislative intent is clear as expressed in § 7 that such questions as shall be pertinent under all three of the §§ 2, 3 and 6, may be submitted at one and the same election and upon one ballot and that when this is done the ballot must state each of such questions separately. So in determining whether or not the notice of election and ballot in the instant case were subject to the vice of duality, §. 2 must be considered solely in the light of the general rule enunciated in the Stern Case and without reference to § 7. A careful reading of § 2 forces us to the conclusion that only three propositions directed to distinctly different purposes or objects can arise thereunder for submission to the electors for determination. First, whether the city shall undertake the ownership of power plants; second, if power plants are already owned whether the city shall substantially enlarge, improve and extend them; and, third, whether or not the city shall lease such plants from others. In this connection it is to be noted that the dis-

junctive "or" is not used between the words "purchase" and "erect" or between the words "enlarge, improve, extend," but that the section reads: "No such city . . . shall purchase, erect *or* substantially enlarge, improve, extend *or* lease from others . . . ." Thus we conclude that the determination as to whether the city shall purchase a plant already in existence or itself erect a plant is left to the discretion of the officers as incidental to the carrying out of the policy of public ownership determined upon by the electors. It follows that the notice of election and the ballot did not present a double question. The Stern Case, 18 N. D. 289, 26 L.R.A. (N.S.) 665, 122 N. W. 403, supra, on which the plaintiff relies, is clearly distinguishable. There the question submitted to the electors was as to whether bonds should be issued "to defray the cost of building and constructing a new waterworks pumping station, and installing therein a new high duty pump and necessary steam boilers, . . . and for the purpose of installing an electric light plant *in connection* with the said pumping station for furnishing street and other lights and power." It was there held that the proposition thus submitted was directed to two manifestly different purposes or objects, namely, a pumping station and an electric light plant and that these two objects being so fundamentally different and distinct could not be made one by the use of the words "in connection," and thus a dual question was submitted to the electors. This court said: "The test whether questions submitted include one purpose or more is whether the objects . . . have a natural or necessary connection with each other." This test was approved and applied in the case of Logan v. Bismarck, 49 N. D. 1178, 194 N. W. 908, supra, where the controversy was as to whether an election called to vote upon the issuance of bonds "for the purpose of constructing or purchasing waterworks," presented a dual question. This court there held that it did not; that the question was single and distinct, namely, as to whether bonds should be issued for the purpose of providing a water supply for the city. We think that the weight of authority is in accord with the reasoning of Judge Johnson in the latter case. See Albuquerque v. Water Supply Co. 24 N. M. 368, 174 Pac. 217, 5 A.L.R. 519, and note at page 538. See, also, Parks v. School Dist. 22 Ariz. 18, 193 Pac. 838; State ex rel. Wahl v. Speer, 284 Mo. 45, 223 S. W. 655; Bowen v. Garber, 77 Okla.

16, 185 Pac. 1095; Commissioners of Public Works v. Dorchester Bank, 115 S. C. 183, 105 S. E. 32; Beers v. Watertown, 43 S. D. 14, 177 N. W. 502 (but see Julson v. Sioux Falls, 48 S. D. 452, 205 N. W. 43); Brinkerhoff v. King, 57 Utah, 300, 194 Pac. 659; Langdon v. Walla Walla, 112 Wash. 446, 193 Pac. 1.

The judgment of the district court is affirmed.

BURKE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.